THE PEOPLE OF THE STATE OF NEW YORK, Appellants, *v.* ENOCH L. FANCHER, Respondent.

A written Constitution must be interpreted rather with reference to its special and general intent and the ordinary and usual sense of the phraseology than to the literal and technical meaning of the words used. The words " in session," as used in section nine of article six of the State Constitution, which authorizes the governor, when the senate is not in session, to fill temporarily, by appointment, a vacancy in the office of justice of the Supreme Court, indicate a present acting or being of the senate as a body. When the sittings are terminated by a long adjournment, and the actual meetings of the body thus interrupted, although the session is continued, the senate is not "in session" within the intent and meaning of that section, and an appointment made by the governor during such an adjournment is valid.

(Argued November 11, 1872; decided November 19, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, rendered in favor of defendant upon a case submitted under section 372 of the Code, for the purpose of determining defendant's right to the office of justice of the Supreme Court.

The legislature met, according to law, on the first Tuesday of January, 1872, and ended the regular session on May 14, 1872, by adjourning *sine die.* After such final adjournment, and on May 14, 1872, the governor, by proclamation, under section 4 of article 4 of the Constitution, convened the senate in extraordinary session for the purpose of acting upon charges against certain judges, and for the consideration of such other business as he might bring before them. Under this proclamation the senate convened on May 14, 1872, and on the same day adjourned to May 22d. They sat on May 22d and 23d, and on the last-named day adjourned to June 18, 1872, on which day they met and continued in session, except certain adjournments for holidays and Sundays, until July 12, 1872, on which day they met and adjourned to September 10, 1872, and met on said day and adjourned to November 20, 1872. On or about September 13, 1872, George G. Barnard was removed from the office of justice of the Supreme Court by a judgment of the Court of Impeachment. On September 21st, the governor appointed the defendant, Enoch L. Fancher, as a justice of the Supreme Court in the place of said Barnard. Mr. Fancher took the oath of office and entered upon its duties. As the general election of 1872 took place less than three months after the happening of the vacancy caused by the removal of Judge Barnard, his successor could not be chosen at said election. The governor, in making this appointment, assumed that the senate was not in session within the meaning of the Constitution, and that the power of appointment, without confirmation by the senate, was vested in him. The question, whether the senate was or was not in session at the time in question, is submitted in this action.

*Francis C. Barlow*, attorney-general, for the appellants. The senate was in session at the time of the appointment. (Cushing's Law and Practice of Legislative Assemblies [2 ed., 1866], §§ 495, 516; Jefferson's Man., 108; 1 Black. Com., 186.)

*Amasa J. Parker* for the respondent. Such a construction will be given to a constitutional provision as will give it the intended effect and will prevent the evil intended to be obviated. (Potter's Dwarris, 144; *Hart* v. *Cleis*, 8 Johns. R., 44; *People* v. *N. Y. C. R. R. Co.*, 13 N. Y., 81; *Holmes* v. *Carley*, 31 id., 289; *Brown* v. *Barry*, 3 Dall., 365; *McClusky* v. *Cornwell*, 11 N. Y., 601, 602.) When words admit of two senses, each of which is conformable to common usage, that sense is to be adopted which best harmonizes with the nature and object of the provision. (Potter's Dwarris, 656, 662; *Bigg* v. *Penn*, 16 Pet. R., 610; *Cohen* v. *Virginia*, 6 Wheat., 418; *Ogden* v. *Saunders*, 12 id., 332; Story on Const., § 422.) The word "session" means an actual sitting for the transaction of business. (Bouvier's Law Dic., title "Session"; Webster's Dic.; 1 R. S., 154, 155; Session Laws, 1828, page 494.)

ALLEN, J. It is conceded that the vacancy in the office of justice of the Supreme Court, to which the respondent was appointed, occurred on the 13th day of September, 1872, and that, if the senate was not on that day "in session," the appointment of the respondent by the governor, on the 21st of the same month, was authorized by the Constitution. It is also conceded that the senate had not been on any day after the 10th day of September actually assembled as a body, and that it had adjourned on that day to meet again on the 20th of November. The actual sittings of the senate were suspended on the 10th day of September, and the senators could only regularly be assembled or convened with authority to transact any business or perform any act as a senate prior to the day to which the body had adjourned by the governor, under the power conferred upon him, to con-

vene the legislature (or the senate only), on extraordinary occasions (Const., art. 4, § 4), and if "in session," they could not be convened by the governor in another session. The Constitution, art. 6, § 9, declares that a vacancy in the office of a justice of the Supreme Court shall be filled for a full term at the next general election happening not less than three months after the vacancy shall occur; and until any vacancy shall be so filled, the governor, by and with the advice and consent of the senate, if the senate shall be in session, or, if not in session, the governor may appoint to fill such vacancy, which appointment shall continue until and including the last day of December after the election at which the vacancy shall be filled. The governor cannot, without the advice and consent of the senate, if that body is in session, fill a vacancy in the office of justice of the Supreme Court, and the claim of the relator is, that notwithstanding the interruptions of the sittings and the adjournment from September 10th to November, without the possibility of having a regularly organized and constituted senate in actual session, or a senate convened capable of advising or consenting to an appointment during the intervening months by any act or assent of the body itself or the individual senators, the senate was "in session" within the meaning of the Constitution, requiring the assent of that body to the appointment of the respondent to the office, which he holds under the appointment of the governor.

The same general rules which govern the construction and interpretation of statutes and written instruments generally, apply to and control in the interpretation of written Constitutions. They are made by practical and intelligent men for the practical administration of the government, and they are to receive that interpretation which will give effect to the intent of the framers as deducible from the language employed and operate most benignly in the interest of the governed, and best harmonize with and give effect to the general scope and design of the instruments. As in other written instruments, the intent and design of a particular provision being

ascertained from the words used, effect will be given to it in harmony with such intent and design. (Story on Constitution, § 400, and see *McClusky* v. *Cromwell*, 11 N. Y., 601.) If words have a doubtful meaning, or are susceptible of two meanings, they should, within the rule, receive that which will effectuate the intent of the framers of the Constitution and the general intent of the instrument.

It was evidently the design of the Constitution :

First. That the office of justice of the Supreme Court for the full term should only be filled at a general election and by the people.

Second. That it should not be filled at an election happening less than three months after the occurring of the vacancy, that the electors may not be taken by surprise.

Third. That there should be no necessary, actual vacancy for any period of time, certainly for no considerable time, and that the vacancy should be filled temporarily by appointment.

Fourth. That if the senate should be in session, so that their advice could be asked and their consent had by the governor to an appointment, no appointment should be made without such advice and consent.

Fifth. That if the senate should not be in session, so that the governor could communicate with it, he should fill the vacancy without its advice and consent.

Sixth. That the governor should not convene the senate solely for the purpose of submitting nominations for confirmation.

Seventh. That the necessity and expediency of filling the vacancy immediately upon its occurring, or before it could be filled for the full term, should be determined by the governor upon whom the appointing power is conferred, subject to the necessity in case the senate should be in session of having the advice and consent of that body.

The evil to be guarded against by a temporary appointment was a vacancy in an important office, the duties of which cannot be performed by deputy or substitute. The remedy or preventive of the possible evil provided is an appointing

power, capable of acting at all times and in any emergency, viz., the governor alone, if the senate is not in session; and the governor and senate, if that body is in session.

The Constitution provides against a vacancy for the briefest period, even the three months which must intervene between the happening of a vacancy and an election to fill it; and so far as practicable, effect should be given to the evident design of the provision by giving a practical interpretation of the language employed. But little aid will be derived by a resort to lexicographers for the technical meaning of the word "session" with a view to determine what was understood and intended by the words "in session," as applied to the senate in that part of the Constitution under review. Indeed, the science of words alone cannot control in the construction of a written constitution, which must be rather interpreted with reference to its special and general intent and the ordinary and usual sense of the phraseology than to the literal and technical meaning of the words used.

To give the phrase, "in session," the effect claimed for it by the relator, and to hold that the senate is now and has been from the 14th of May "in session," within the meaning of the Constitution, so that no appointment to fill a vacancy in the office of justice of the Supreme Court occurring during that time can be made, except by and with the advice and consent of the senate, practically nullifies the provision and defeats the remedy intended to be provided for the possible evils resulting from a vacancy in the office by making an appointment impossible for several months at a time.

The Senate adjourned on the 10th of September to meet again on the 20th of November. To declare, by resolution, on the 10th day of September that their next meeting should be on a future day, several weeks distant, and to adjourn to that day, was virtually to declare that the senate would not be in session, the senators would not assemble or meet in a body in the interim. Nothing is proved by saying, in conformity with the definition of the term "session," as given

by Bouvier and other lexicographers, that the extraordinary session of the senate, which commenced on the 14th of May, when it was convened by the governor, still continues and will only end when it shall finally adjourn *sine die*, or by the meeting of the senate at the commencement of the next annual session of the legislature.

The session of the senate, like the sessions of the legislature or of congress, or the term of a court, continues, notwithstanding repeated recesses or adjournments, until the final close or end in some way provided by law. It is true that should the senate not come together pursuant to the adjournment, and so the session fail (and that that will not be the case cannot now certainly be known), a question would arise whether the session did not in fact terminate on the 10th of September, the day of the last adjournment. This question may never arise, but it illustrates the difficulty of holding that the senate was " in session on the 13th or 21st days of September." The term, as thus used, conveys a distinct idea of the time within which a body has a continuing existence for certain purposes, not affected by adjournments from day to day or from time to time. The legislature holds ordinarily but one session, known as the annual session, and it may be continued by adjournment over intervening months, and yet the session will be the same.

The word " session," as thus used, conveys a distinct idea, and indicates a period or term of time in the abstract, while the words " in session," as used in the clause under review, indicate a present acting or being of the senate as a body.

The Constitution does not forbid the appointment by the governor alone " during a session of the senate," but only when the senate " is in session." The word " session " may mean the actual sitting of a court or legislative body, or the time during which a court or legislature meet for the transaction of business, and the connection in which it is used must determine its meaning as used. When it is said that a court or legislative body is in session, the meaning is that the members are assembled for business. It is not

denied that a single "session" may be interrupted and consist of several actual sittings, with weeks or months intervening. In that case the session will be continued over the intervening time, and the several sittings will be connected together as one session by the adjournments. Although the months between the several sittings will be between the commencement and the final termination of the session, in no proper sense will they be included as a part of the session. They are only constructively, if at all, a part of the session. While the session substantially continues adjourned from day to day, or over holidays, or with brief and usual recesses, so that the session is practically continuous, the body might possibly be regarded as practically in session during such recesses. That need not be considered. But when the sittings are terminated by an adjournment for months, and the actual meeting or sitting of the body thus interrupted, although the session is continued, it cannot be said that the body is "in session." The spirit and intent of the Constitution would be sacrificed to what is claimed to be the letter of the instrument, to hold that the senate was "in session" during all the months during which it might adjourn, and thus extend an ordinary or extraordinary session.

The Constitution, designed for practical purposes, had respect to realities, and was not dealing with fictions or a constructive condition of things. It had respect to a senate actually and duly convened, and in readiness to act upon the nominations of the governor and the transaction of other business pertaining to that body, and not to a constructive session a body not actually or potentially existing. It was not intended for a condition of things when as in this case, the senate was not actually convened, and when it was not to convene for months to come, and when a call of the executive would be necessary to enable that body to advise in reference to the nominations.

It is not intended to intimate an opinion beyond this case. Although the provision applies to all sessions, the framers of the Constitution only had in mind the annual sessions of the

senate as a constitutional branch of the legislature which are ordinarily and substantially continuous, are not of long duration, and the terms they have used are more peculiarly applicable to the condition of things during such session. It was not contemplated that an extraordinary occasion would arise when the senate as an independent body would be in session for weeks at a time at intervals and continuing their session by long adjournments during the year. It is very palpable that it is not the intent of the Constitution that the senate should be regarded as "in session" during these long adjournments, or that any such constructive session or sitting should deprive the governor of the right to fill the vacancy or the people of the services of a justice of the Supreme Court. The judgment should be affirmed.

All concur except PECKHAM, J., not voting.

Judgment affirmed.