NELSON CANTELINE and Others, Respondents, v. GLENN H. McCLELLAN, Individually and as Commissioner of Police of the City of Buffalo, New York, Appellant.*

Fourth Department, December 27, 1939.

*David Diamond, Corporation Counsel [Andrew P. Ronan of counsel], for the appellant.*

*William B. Mahoney,* for the respondents.

*John J. Bennett, Jr., Attorney-General [Henry Epstein, Solicitor-General, of counsel], amicus curiæ.*

*William C. Chanler, Corporation Counsel of the City of New York [Paxton Blair* and *Stanley Buchsbaum* of counsel], *amicus curiæ.*

CUNNINGHAM, J. The plaintiffs are members of the police force of the city of Buffalo, N. Y. The defendant is commissioner of police of such city. The defendant threatens to remove the plaintiffs from office because when called before a grand jury they refused to testify concerning their official conduct.

An amendment to the Constitution of the State of New York became effective on January 1, 1939, by which there was added to the Constitution the following provision: " Any public officer who, upon being called before a grand jury to testify concerning the conduct of his office or the performance of his official duties, refuses to sign a waiver of immunity against subsequent criminal prosecution, or to answer any relevant question concerning such matters before such grand jury, shall be removed from office by the appropriate authority or shall forfeit his office at the suit of the Attorney-General." (Art. 1, § 6.)

The plaintiffs were called before the grand jury both before and after this amendment became effective. They allege in their complaint that they refused to sign a waiver of immunity on the ground that they would waive their constitutional protection against self-incrimination.

It is conceded that the testimony of plaintiffs is sought concerning their activities as police officers prior to January 1, 1939.

Plaintiffs claim that this constitutional provision applies to testimony as to official acts by them after the constitutional amendment became effective on January 1, 1939.

This contention of plaintiffs has been upheld by the court below upon the theory that this amendment to the Constitution should be construed to operate only prospectively and not retrospectively.

Of course, the cardinal rule of construction is that effect shall be given to the intention of the framers of this amendment as deduced from the language used therein. (*People* v. *Fancher*, 50 N. Y. 288.)

The plain language of this provision indicates that it was intended to refer only to future examinations of public officers before a grand jury, but it does not disclose any intention to limit such examinations to future official acts and conduct.

The rule of construction adopted by the court below reads as follows: " Constitutional provisions, like statutes, always operate prospectively and not retrospectively, unless the words used or *the objects to be accomplished* clearly indicate that a retrospective operation was intended." (Italics mine.) (16 C. J. S. 81.)

This rule is not always followed in the construction of the Constitution. (*Matter of Lee & Co.'s Bank*, 21 N. Y. 9; affd., *sub nom. Sherman* v. *Smith*, 66 U. S. [1 Black] 587.)

We believe that the object sought to be accomplished by this amendment was to purge the public service of dishonest and unfaithful officials. Such result will not be fully attained unless the language of this provision is construed to require the dismissal from office of a public official who refuses to answer before a grand jury as to his official acts before the amendment became effective.

There is a further rule applicable to the construction of this amendment to the Constitution, which is that the court should consider the evil sought to be corrected and the remedy provided therefor. (*American Historical Society* v. *Glenn*, 248 N. Y. 445; *Association Protection Adirondacks* v. *MacDonald*, 253 id. 234, 238.)

The purpose of this amendment was not to compel public officers to incriminate themselves by testimony given before a grand jury. Rather it was to oust from public office an officer who, when called to testify concerning his official acts or conduct, refuses to answer upon the ground that such answer would incriminate him. The admission that he was guilty of a crime in the performance of his duties is under this amendment sufficient cause for his ouster from office.

When this provision was before the Constitutional Convention of 1938 for consideration one of the delegates said: " May I say that this proposal came before the Committee on Governor and Other State Officers for consideration. The committee studied this question very thoroughly, and came to the conclusion that no public officer who sought to hide behind the cloak of self-incrimina-

tion was worthy of holding public office, and that an enactment of this kind in the Constitution was absolutely necessary to give to our government the kind of public officials that we have a right to expect, the public official whose every act in public office shall be open to scrutiny, and who shall not refuse to answer by reason of the fact that.his answer might be self-incriminatory."

In the Address of the Convention to the People of the State it was said that this amendment provided that " Public officials called before a grand jury to testify concerning their official conduct and refusing to waive immunity or to answer any relevant question shall be removed."

This provision does not compel a public officer to give testimony which will incriminate him. He may refuse to testify and then resign, and that will end the matter.

It is hardly probable that the members of the Constitutional Convention anticipated that this amendment would produce evidence from the lips of a public officer which would convict him of a crime. If he refused to answer he would lose his office, but if he did answer and gave incriminatory evidence he might not only lose his office but might also be indicted. It is apparent that the main purpose of this provision was to remove from office unscrupulous public officials. It is almost an insult to the intelligence of the members of the Constitutional Convention to say that they intended that this provision should not affect public officials who had violated their oath of office and had committed a crime in the performance of their official duties prior to January 1, 1939. If our form of government is to endure the confidence of the People must not be destroyed by leaving in office men who admit that they have betrayed their public trust. It would be a reflection upon the integrity of the police force of the city of Buffalo to permit men who admit criminal misconduct to remain as members of that force. The Constitution should be construed so as to permit unscrupulous public officers to be removed from office ·even though their criminal acts had taken place prior to January 1, 1939.

The evil and harmful result of allowing such officers to remain in the public service must be held to be a conclusive reason for an interpretation of the Constitution that will prevent such result. A contrary interpretation would not be in accord with the rules of construction. (*People ex rel. Carter* v. *Rice*, 135 N. Y. 473, 506.)

The efficiency of this salutary provision of the Constitution should not be impaired by limiting the scope of its terms.

The plaintiffs claim that this provision of the Constitution, if construed as claimed by the defendant, would be an *ex post facto* law which is prohibited by the Federal Constitution. They argue

that the forfeiture of office is an additional penalty for a crime committed before the constitutional amendment became effective. Under the charter of the city of Buffalo the plaintiffs may be dismissed from the police force for official misconduct. The constitutional provision under consideration in this case provides an additional method of removal and not an additional penalty.

The judgment so far as appealed from should be reversed upon the law, with costs, and judgment should be ordered in favor of the defendant, dismissing the complaint, with costs.

All concur. Present — SEARS, P. J., LEWIS, CUNNINGHAM, TAYLOR and DOWLING, JJ.

Judgment, so far as appealed from, reversed on the law, with costs, and judgment directed in favor of the defendant, dismissing the complaint, with costs.