UNITED STATES of America,

v.

Dominic ALLOCCO, Petitioner.

United States District Court
S. D. New York.

Dec. 1, 1961.

Robert M. Morgenthau, U. S. Atty., Southern Dist. of New York, New York City, for the United States; Andrew T. McEvoy, Jr., Asst. U. S. Atty., Washington, D. C., of counsel.

Anthony F. Marra, Atty. in Charge, Legal Aid Soc., New York City, for petitioner; Leon B. Polsky, New York City, Paul Bender, Philadelphia, Pa., of counsel.

LEVET, District Judge.

This is a motion by the petitioner, Dominic Allocco, pursuant to Section 2255 of Title 28 U.S.C. and/or Rule 35 of the Federal Rules of Criminal Procedure, 18 U.S.C., to vacate and set aside his judgment of conviction on the ground that the trial judge was a recess appointee of the President of the United States and as such could not exercise judicial power under Article III of the Constitution.

## Facts

Proceedings with Respect to Petitioner

On October 20, 1955, a jury in a trial before Hon. John M. Cashin in the United States District Court for the Southern District of New York returned a guilty verdict against petitioner on three counts of an indictment charging a conspiracy and two substantive counts in violation of the federal narcotics laws. (Sections 173, 174, U.S.C.A., Title 21; Section 371, U.S.C., Title 18.)

On October 31, 1955, petitioner was sentenced by Judge Cashin to a ten-year term of imprisonment as a third federal narcotics offender.

The Court of Appeals for the Second Circuit affirmed petitioner's conviction in a per curiam opinion stating that "[t]he evidence tending to prove that defendants had engaged in the illegal sale of narcotics was overwhelming, and the jury verdict thoroughly justified." 234 F.2d 955, at page 956.

On August 13, 1956, the district court entered its order on judgment upon the mandate of the Court of Appeals. Thereafter, petitioner filed with the Court of Appeals a "motion to stay mandate" which was denied on September 4, 1956.

On September 10, 1956, petitioner filed an application with the Court of Appeals for a rehearing of the order denying the motion to stay the mandate. This application was denied by the Court of Appeals on September 24, 1956.

On October 18, 1956, a letter from petitioner was received by Chief Judge Clark of the Court of Appeals accusing him of being prejudiced against the petitioner. This letter was treated by the Court of Appeals as an application for rehearing and was denied on October 23, 1956.

On September 10, 1956, petitioner requested, by letter, that Judge Cashin reduce the ten-year term of imprisonment. This letter was treated as a motion to reduce the sentence and was denied on September 19, 1956. In a letter dated September 26, 1956, petitioner wrote to Judge Cashin and claimed error and prejudice in the proceedings in that certain envelopes, which were trial exhibits and which had contained narcotics, were destroyed after trial and before argument of the appeal. Petitioner also submitted an affidavit petitioning the United States Commissioner for a grand jury indictment against an Assistant United States Attorney. Judge Cashin treated this as a motion for reconsideration of the order denying a reduction of sentence. This motion was denied in an opinion (#23131) filed by Judge Cashin on December 31, 1956.

The Supreme Court of the United States denied certiorari on December 3, 1956 (352 U.S. 931, 77 S.Ct. 231, 1 L.Ed. 2d 165). On January 28, 1957, petitioner's application for rehearing was denied (352 U.S. 990, 77 S.Ct. 388, 1 L.Ed.2d 369).

Petitioner is presently in service of his sentence in the United States Penitentiary, Atlanta, Georgia.

### The Appointment of Hon. John M. Cashin

■ On Sunday, July 31, 1955, the Hon. Samuel H. Kaufman, District Judge of the United States District Court for the Southern District of New York, retired. The United States Senate adjourned, sine die, at twelve midnight on the following Tuesday, August 2, 1955, pursuant to S.Con.Res. 57 (101 Cong. Rec., part 12, D612). On August 17, 1955, the President of the United States issued an interim commission to the Hon. John M. Cashin as District Judge for the United States District Court for the Southern District of New York. The oath of office was administered to Judge Cashin on September 15, 1955. Judge Cashin's appointment filled the vacancy occasioned by the retirement of the Hon. Samuel H. Kaufman. The United States Senate reconvened on January 3, 1956 (102 Cong.Rec., part 1, page 3), and confirmed the nomination of Judge Cashin on March 1, 1956. On March 2, 1956, a permanent commission was issued to Judge Cashin by the President of the United States and on March 9, 1956, the oath of office was administered to Judge Cashin. The oath of office administered on September 15, 1955 and on March 9, 1956 was that prescribed by Section 453, Title 28, United States Code.

### Discussion

Article II, Section 2, Clause 3 of the Constitution provides:

> "The President shall have Power to fill up all Vacancies that may happen during the Recess of the Senate, by granting Commissions which shall expire at the End of their next Session."

The petitioner contends that since the vacancy existed on July 31, 1955, when Judge Samuel H. Kaufman retired, before the Senate recessed at twelve midnight on August 2, 1955, the President had no right to make a recess or interim appointment under the clause above cited on August 17, 1955. In other words, petitioner would have this court in effect construe the words "may happen" to mean "may happen to occur."

This construction, I believe, is unsound. The basic design, it seems, of the framers of the Constitution was that offices necessary to the complete operation of the government should always be filled. To hold that the power as to interim appointments applies only when the vacancy *first occurs* during the recess is manifestly absurd.

As Mr. Justice, later Chief Justice, Stone said in United States v. Classic, 1941, 313 U.S. 299, 316, 61 S.Ct. 1031, 1038, 85 L.Ed. 1368:

> "* * * If we remember that 'it is a Constitution we are expounding', we cannot rightly prefer, of the possible meanings of its words, that which will defeat rather than effectuate the Constitutional purpose."

In considering a similar provision of the New York State Constitution, although in connection with the meaning of the words "in session," Allen, J. of the New York Court of Appeals wrote:

> "The same general rules which govern the construction and interpretation of statutes and written instruments generally, apply to and control in the interpretation of written Constitutions. They are made by practical and intelligent men for the practical administration of the government, and they are to receive that interpretation which will give effect to the intent of the framers as deducible from the language employed and operate most benignly in the interest of the governed, and best harmonize with and give effect to the general scope and design of the instruments. As in other written instruments, the intent and design of a particular provision being ascertained from the words used, effect will be given to it in harmony with such intent and design. (Story on Constitution, § 400, and see Mc-

Clusky v. Cromwell, 11 N.Y. 593, 601.) If words have a doubtful meaning, or are susceptible of two meanings, they should, within the rule, receive that which will effectuate the intent of the framers of the Constitution and the general intent of the instrument." The People v. Fancher, 1872, 50 N.Y. 288, 291–292.

William Wirt, Attorney General on October 22, 1823, in an opinion on this question, well pointed out:

"The substantial purpose of the constitution was to keep these offices filled; and powers adequate to this purpose were intended to be conveyed. But if the President shall not have the power to fill a vancancy thus circumstanced, the powers are inadequate to the purpose, and the substance of the constitution will be sacrificed to a dubious construction of its letter." 1 Ops.Atty.Gen. 631, 632 (1823).

The opinions of the Attorney General in various administrations have uniformly upheld the right of the President to make interim appointments whether the vacancy arose during the session of the Senate or during the recess. The distinction between a nomination and a temporary appointment depends upon whether the Senate is in session. It is my opinion that Attorney General Wirt correctly interpreted the word "happen" as equivalent to "happen to exist" rather than "happen to take place." 1 Ops.Atty.Gen. 631 (1823). In this opinion Wirt also wrote:

" * * * In reason, it seems to me perfectly immaterial when the vacancy first arose; for, whether it arose during the session of the Senate, or during the recess, it equally requires to be filled. The constitution does not look to the moment of the origin of the vacancy, but to the state of things at the point of time at which the President is called on to act. Is the Senate in session? Then he must make a nomination to that body. Is it in recess? Then the President must fill the vacancy by a temporary commission." (p. 633)

See 3 Ops.Atty.Gen. 673 (1841); 14 Ops. Atty.Gen. 562 (1875); 16 Ops.Atty.Gen. 522 (1880); 16 Ops.Atty.Gen. 538 (1880); 17 Ops.Atty.Gen. 521 (1883); 19 Ops.Atty.Gen. 261 (1889); 26 Ops. Atty.Gen. 234 (1907); 30 Ops.Atty.Gen. 314 (1914).

Attorney General T. W. Gregory in 1914, in stating "that the expression in the Constitution 'all vacancies that may happen during the recess' signifies 'all vacancies that may *happen to exist during* the recess,' " said also:

"This conclusion is founded on the following uniform and unbroken line of authority furnished by the opinions of my predecessors:

Mr. Wirt, 1 Opinions 631.
Mr. Taney, 2 Opinions 525.
Mr. Legare, 3 Opinions 673.
Mr. Mason, 4 Opinions 523.
Mr. Cushing, 7 Opinions 186.
Mr. Bates, 10 Opinions 356.
Mr. Stanberry, 12 Opinions 32.
Mr. Evarts, 12 Opinions 455.
Mr. Williams, 14 Opinions 562.
Mr. Devens, 16 Opinions 522.
Mr. Hoyt (acting), 26 Opinions 234.
* * *

" * * * If, during the recess, the power is not in the President, then it is nowhere, and there would be a time when for a season the President is required by the Constitution to see that the laws are executed and yet denied the opportunity to avail of the only means provided for their execution." 30 Ops.Atty. Gen. 314, 315, 316.

On July 19, 1832, Roger B. Taney, Attorney General, later Chief Justice of the United States, clearly sustained this view. 2 Ops.Atty.Gen. 525.

Congress has recognized the power of the President to make such an appointment as indicated by the legislative provisions for salaries for recess appointees.

The pertinent statute, Title 5 U.S.C.A. § 56, states:

"§ 56. Salaries to certain recess appointees

"No money shall be paid from the Treasury, as salary, to any person appointed during the recess of . the Senate, to fill a vacancy in any existing office, if the vacancy existed while the Senate was in session and was by law required to be filled by and with the advice and consent of the Senate, until such appointee has been confirmed by the Senate. The provisions of this section shall not apply (a) if the vacancy arose within thirty days prior to the termination of the session of the Senate; * * *."

The legislative history of the Constitution further supports the power, as well as the necessity, to make such appointments.

Comparing the provisions of Article II, Section 2, Clause 2 with those of Article II, Section 2, Clause 3, Hamilton in The Federalist No. 67 wrote:

" * * * The relation in which that clause stands to the other, which declares the general mode of appointing officers of the United States, denotes it to be nothing more than a supplement to the other, for the purpose of establishing an auxiliary method of appointment, in cases to which the general method was inadequate. The ordinary power of appointment is confined to the President and Senate *jointly*, and can therefore only be exercised during the session of the Senate; but as it would have been improper to oblige this body to be continually in session for the appointment of officers, and as vacancies might happen *in their recess*, which it might be necessary for the public service to fill without delay, the succeeding clause is evidently intended to authorize the President, *singly*, to make temporary appointments 'during the recess of the Senate, by granting commissions which shall expire at the end of their next session.' "

In The Federalist No. 78, Hamilton wrote: "As to the mode of appointing the judges; this is the same with that of appointing the officers of the Union in general, * * *."

As stated by Chief Justice Marshall in Cohens v. Commonwealth of Virginia, 1821, 6 Wheat. 264, 418, 19 U.S. 264, 418, 5 L.Ed. 257:

" * * * The opinion of the Federalist has always being considered as of great authority. It is a complete commentary on our constitution; and is appealed to by all parties, in the questions to which that instrument has given birth. Its intrinsic merit entitles it to this high rank; and the part two of its authors performed in framing the constitution, put it very much in their power to explain the views with which it was framed. * * *"

In the case of In re Farrow, C.C.N.D. Ga.1880, 3 F. 112, the court upheld the President's right to make the appointment when the vacancy first arose while the Senate was in session. Justice Woods of the United States Supreme Court, sitting in the Georgia circuit wrote:

"On the other hand it is claimed that the phrase 'vacancies that may happen during the recess of the senate,' when properly construed, means 'vacancies which may happen to exist during the recess of the senate.' In support of this latter view the practice of the executive department of the government for nearly 60 years is invoked, and the concurring opinions of 10 of the distinguished jurists who have filled the office of attorney general of the United States are cited." (pp. 113–114)

Decisions in the state courts also support the present contentions of the government. State ex rel. Fritts v. Kuhl, 1889, 51 N.J.L. 191, 17 A. 102 (containing an excellent summary of the federal law on the subject); Richardson v. Young, 1910, 122 Tenn. 471, 125 S.W. 664 (citing State v. Kuhl, supra).

Joseph Story, Dane Professor of Law in Harvard University and one of the Justices of the United States Supreme Court, after stating that the constitutional provision in issue applied to appointments to offices under the United States, provided for by the Constitution and laws of the Union, wrote:

"§ 1551. The propriety of this grant is so obvious, that it can require no elucidation. There was but one of two courses to be adopted; either, that the senate should be perpetually in session, in order to provide for the appointment of officers; or, that the president should be authorized to make temporary appointments during the recess, which should expire, when the senate should have had an opportunity to act on the subject. The former course would have been at once burthensome to the senate, and expensive to the public. The latter combines convenience, promptitude of action, and general security.

"§ 1552. The appointments so made, by the very language of the constitution, expire at the next session of the senate; and the commissions given by him have the same duration. * * *" Story, 3 Commentaries on the Constitution of the United States, 410–411 (1833).

The petitioner's argument concerning the situation of a *de facto* judge is not applicable since the court considers Judge Cashin to have been a *de jure* judge during the recess appointment period.

The petitioner argues that the most natural meaning of "happen" is "to take place," "to occur," and states that all dictionaries support this. Petitioner cites Oxford English Dictionary, Webster's New International Dictionary, 2nd Ed. p. 1136, and Webster's Third New International Dictionary, p. 1030 (p. 54 of Brief for Petitioner). Petitioner also states: " 'Happen,' says the Oxford English Dictionary, is 'the most general verb to express the simple *occurrence* of an event.' (Emphasis added)." (p. 56 of Brief for Petitioner) Petitioner ar-

gues at one point in his brief that: "The whole argument revolves about the meaning of the words 'may happen' in the provision just quoted." (p. 54, Brief for Petitioner)

The court must again stress the principle that in regard to constitutional construction and interpretation, if there is doubt as to the meaning of words, the interpretation that will effectuate the intent of the framers and the intent of the instrument should govern. See United States v. Classic, supra; The People v. Fancher, supra.

The petitioner states that "happen" means "to occur." "Occur" is synonymous with "happen." However, the definition of "occur" indicates that it could mean "to be found or met with," "to present itself," or "to appear." Webster's New International Dictionary (2d Ed. 1959). Certainly, these definitions are not wholly inconsistent with the phrase "happen to exist."

An excellent discussion as to the meaning of the word "happen" is found in Richardson v. Young, supra, 125 S.W. at 683–684, where it states:

"The words 'occur' and 'happen' are usually used in referring to vacancies in office, and mean the same thing.

"In Fritts v. Kohl, 51 N.J.Law, 192, 17 Atl. 102, it is said:

" 'The word "happen," in its strictest literal sense, signifies an unexpected event. It is also not uncommonly used as synonymous with "occur," "take place," "exist," and "happen to be." '

"Mr. Webster defines the verb 'to occur': 'To be found or met with'— and the Century Dictionary: 'Be found; be met with,' and a quotation is given showing that it is synonymous with the word 'exist.'

"In Roget's Thesaurus, in treating of the state of 'being,' the word 'occur' is used as equivalent of 'exist.'

"We think that 'occur' or 'occurring' means the same as 'happen' or

'happening,' or that both may be used in the sense of 'existing' or 'to be found,' and that this definition has been given them in construing clauses of Constitutions and statutes concerning the filling of vacancies."

The petitioner argues that Judge Cashin was not entitled to preside over petitioner's trial for he did not have life tenure in office, thus violating an explicit requirement of the Constitution; and that he was appointed without the advice and consent of the Senate. The petitioner then further states: "Nor was his temporary appointment by the President alone authorized by the exception for 'recess' appointments, * *." (p. 31, Brief for Petitioner) Petitioner also stated: "Judge Cashin was not an ordinary temporary recess Judge." (p. 32, Brief for Petitioner) This type of reasoning appears to be incongruous. By accepting the ability of the President to make certain recess appointments, it must of necessity follow that at least in this situation life tenure is not a requirement and that there could be such recess appointments without the advice and consent of the Senate.

There is no doubt then that the President has power to make recess appointments to vacancies which may happen *to exist* during a recess of the Senate. It is also clear that a recess appointee may exercise judicial power under Article III of the Constitution.

Artlice III of the Constitution vests judicial power in the courts. Only through the judges of those courts is the judicial power exercised. However, Article II, rather than Article III, provides the method by which such judges are appointed. The proximity of Clause 3 to the "nomination" clause of that Article is significant. Obviously, if a recess appointee were not to be permitted to exercise judicial power, established by Article III, no purpose would be served by providing for appointment under Article II.

The work of the judiciary, like that of the officers of other departments, must be maintained at all times.

Judge Cashin therefore was a valid judge fully authorized to exercise judicial power as a district judge.

The court would like to thank Paul Bender, Esq. for his diligent efforts extended on behalf of the petitioner. The court would also like to indicate its appreciation to Anthony F. Marra, Esq. and Leon B. Polsky, Esq. of the Legal Aid Society, New York, for their work in this matter.

The motion must be denied.

So ordered.