## LUCAS v. FUTRALL.

### Opinion delivered December 9, 1907.

1. STATE OFFICER—POWER TO CREATE.—As Const. 1874, art. 19, § 19, makes it the duty of the Legislature to provide by law for the support of institutions for the support of the deaf and dumb and of the blind, an act creating the permanent State office of Superintendent of the School for the Blind is not within the prohibition of art. 9, § 9, of the Constitution forbidding the Legislature to create any permanent State office not expressly provided in such Constitution. (Page 546.)

2. SCHOOL FOR BLIND—TENURE OF SUPERINTENDENT.—Kirby's Digest, § 4227, providing that the Superintendent of the School for the Blind shall hold his office "during the pleasure of the trustees," is impliedly repealed by act of May 14, 1907, section 1, providing that such Superintendent "shall be elected for a term of three years" and section 6, providing that he may be discharged for causes mentioned. (Page 548.)

3. SAME—SUPERINTENDENT AS PUBLIC OFFICER.—The Superintendent of the School for the Blind, whose tenure, compensation and duties are fixed by statute, who is required to give bond, and whose duties are of a public nature, continuing and not affected by a change in the person of the incumbent, is a public officer. (Page 549.)

4. SAME—POWERS OF MEMBERS OF BOARD OF TRUSTEES.—A former Superintendent of the Blind School was not justified in holding over after the term of his successor had begun because certain persons, purporting to be a majority of the board of trustees, directed him to continue to act as Superintendent until further orders from the board, as the individual members of the board have no authority to bind the board by their individual action. (Page 550.)

5. OFFICER—RIGHT TO REMOVE.—Where an officer does not hold at pleasure but during good behavior or subject to removal for specified causes, before he can be removed there must be notice and a hearing given to him. (Page 551.)

6. EQUITY—REMEDY AT LAW.—Chancery will not give relief by ousting one improperly holding an office, as there is a plain, complete and adequate remedy at law. (Page 551.)

7. ACTION—TRANSFER OF CAUSE.—Where plaintiff erroneously sued in equity to enjoin defendant from interfering with his management of a public office, of which plaintiff was not in possession, and failed to amend his pleadings and ask that the cause be transferred to the law court, the decree of the chancellor dismissing the suit for want of jurisdiction will be affirmed. (Page 551.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Judge; affirmed.

S. D. Lucas brought suit against T. A. Futrall, alleging that on the 5th day of June, 1907, at its regular monthly meeting, the Board of Trustees of the State Charitable Institutions of the State of Arkansas elected plaintiff Superintendent of the Arkansas School for the Blind for a term of two years, commencing the first day of October, 1907; that plaintiff gave the bond required by law; that on the last mentioned date, to-wit, October 1, 1907, the President of the Board of Trustees placed plaintiff in charge of said institution as Superintendent, and he assumed the performance of his duties as such, and continues to perform the same. That the business and affairs of said institution are carried on largely by correspondence, and that every day mail is brought to the institution, and that said mail is the property of the Superintendent, and that plaintiff is entitled to its exclusive control and custody; that the defendant is staying at the Blind School, holding himself out as Superintendent, and is exercising the functions of Superintendent; that he has been wrongfully receiving, accepting, handling and opening the mails of the institution; that these illegal and wrongful acts of defendant in attempting to exercise the functions of an office to which plaintiff was elected, and into which he was installed by the Board of Trustees, is leading to endless confusion in the affairs of the school, and is a great and irreparable injury, not only to the plaintiff, but to the public as well; that plaintiff has no adequate remedy at law.

The prayer of the complaint was that defendant be enjoined from remaining on the grounds of the Arkansas School for the Blind and from exercising or attempting to exercise any of the functions of Superintendent of said school, and from interfering with plaintiff in the exercise of his duties as Superintendent of said school, and from accepting and handling the mails of the institution, and for all other general and proper relief.

The defendant filed an answer and cross complaint, in which he alleged that the Board of Trustees elected him Superintendent of the Arkansas School for the Blind on the 4th day of April, 1906, and on the 15th day of June, 1906, installed him into office, and he thereupon entered into the discharge of the duties of the office, and has continuously performed them from that time until now, and is still doing so; he denied that plaintiff was ever at any time lawfully elected to the office, or that he was, either on October 1st or at any other time, placed in charge of the institution as Superintendent or otherwise, and denied that he ever assumed the performance of the duties or continues to perform them; denied that plaintiff was entitled to the control of the mails; admitted that defendant is staying at the Blind School and holding himself out as Superintendent, but denied that he committed any illegal or wrongful act in attempting to exercise the functions of the office; denied that his acts have led to confusion in the affairs of said school, or that any act of his is a great and irreparable injury to plaintiff and to the public.

He also made his answer a cross complaint, in which he alleged his election in 1906, and taking charge of the school in June, 1906, and alleging further, that on September 30, 1907, he received a written direction from the majority of the members of the board to retain control of the institution until the further action of the board; and says that on the 8th of October, 1907, when the board was in regular session, he was duly and lawfully elected Superintendent for two years, or during the pleasure of the board, which election he accepted; that he is in full possession and control as Superintendent; alleges that plaintiff is wrongfully, claiming to be Superintendent, and asks that he be enjoined from interfering with defendant in the management of the school.

Plaintiff introduced a certified copy of the proceedings of the Board of Trustees held on the 5th day of June, 1907, as follows:

"I, H. F. Hampton, Secretary of the Board of Trustees of the State Charitable Institutions, do hereby certify that at a regular meeting of said Board, held on the 5th day of June, 1907, the following, among other, proceedings were had:

" 'For Superintendent of the School for the Blind, Mr. Braly nominated Prof. Thomas A. Futrall; Mr. Davis nominated Prof. S. D. Lucas.

" 'The Secretary called the roll, and the ballot resulted as follows:

" 'For Futrall, three (3)

" 'For Lucas, four (4).

" 'Prof. S. D. Lucas, having received a majority of the votes cast, was declared duly elected Superintendent of the Arkansas School for the Blind for a term of two years beginning October 1, 1907.' "

Plaintiff introduced a certified copy of the proceedings of the Board of Trustees of the State Charitable Institutions, showing that on June 5, 1907, he was appointed Superintendent of the School for the Blind for a term of two years beginning October 1, 1907. He testified that on October 1, 1907, he was placed in charge of the institution by Mr. Yates, president of the board; that he had been on the grounds of the institution a number of times, and had done all that he could to take possession, short of physical force and violence; that defendant declined on demand to surrender possession.

Mr. Yates, president of the board, corroborated plaintiff's testimony as to the demand for possession by plaintiff and defendant's declination.

Defendant testified that he had not been notified by the trustees to turn over the institution to plaintiff, and offered in evidence a letter to him from certain members of the Board of Trustees, as follows:

"Sept. 30th, 1907.

"Prof. T. A. Futrall, Little Rock, Ark.

"Dear Sir—We, the undersigned, duly and legally constituted members of the State Board of Charities of Arkansas,

hereby inform you that we severally and all collectively favor your retention as Superintendent of the Arkansas School for the Blind, and desire to elect you to this position at our first opportunity.

"We have endeavored to secure a meeting of the board today that we might elect you at this time, but, failing in this, we assure you that as soon as the board meets in regular session you will be re-elected by virtue of the power vested in us by sections 4227 and 4231, Kirby's Digest of the laws of Arkansas.

"We have the right, power and authority to take all the steps necessary to bring about your election, and therefore we direct that you retain control of your present status in regard to the institution, upon our assurance that you will be elected as the Superintendent of said school when the first opportunity presents itself.                    Very respectfully,

"W. C. BRALY,

"A. M. DUFFIE,

"W. O. TROUTT,

"E. C. PARSONS,

"Members State Board of Charities."

Also he introduced certain evidence tending to prove that the appointment of plaintiff was rescinded on October 8, 1907, by the board.

The chancellor dismissed the bill for want of jurisdiction. Plaintiff appealed.

*J. H. Harrod*, for appellant.

The act provides that the Superintendent be elected for a term of two years. Act 1907, p. 785, § 1. It is undisputed that appellant was elected Superintendent by the Board of Trustees at a meeting held on June 5, 1907, his term to begin October 1, 1907. It is shown that appellant did all that could be done, without the use of force and violence, to take possession of the institution and manage it. Injunction lies to protect an incumbent of an office in the possession and exercise of the functions of that office from interference by another claimant. 69 Ark. 606.

*M. P. Huddleston* and *Jones & Hamiter,* for appellee.

Appellant was never in possession, and cannot invoke equitable relief. 69 Ark. 606. Appellee had legal title to the office.

The action of the four members of the Board of Trustees, on September 30, after due notice to the other members, was the action of the board, and tantamount to the discharge of appellant, and reelection of appellee.   66 N. W. 234; Kirby's Dig. § 4129; Acts 1905, p. 135.   And the legality of appellee's appointment cannot be collaterally attacked.   39 La. Ann. 817; 2 So. 498.

2. The Superintendent of the School for the Blind is not an officer whose term is fixed by law, so that he cannot be removed at the pleasure of the Board.   The statute provides that the superintendent and others shall hold at the pleasure of the Board, and is not repealed.   Kirby's Dig. § 4227.

HILL, C. J.   The   Reporter will state the substance of the pleadings and evidence, and it will be seen therefrom that this is virtually a contest for the Superintendency of the Arkansas School for the Blind, under guise of a chancery proceeding brought by Lucas to enjoin Futrall from interfering with his possession of the position, and a cross complaint by Futrall asking an injunction against Lucas restraining him from interfering with his possession of the Superintendency.   Each contestant alleges that he is in possession, and seeks to bring his case within the principle announced in *Rhodes* v. *Driver,* 69 Ark. 606, which is to the effect that a court of equity will not permit itself to be made a forum for the determination of disputed questions of title to public office, but will, when necessary, protect possession of an office, whether *de facto* or *de jure,* against an adverse claimant disturbing his discharge of duties.

The complaint and cross-complaint each stated an equitable cause of action.   The chancellor dismissed the suit for want of jurisdiction.   Futrall has not appealed, and the only question presented is upon Lucas's appeal.

The chancery court had jurisdiction; for, as stated, the allegations of either complaint or cross-complaint gave jurisdiction. But, if this position is a public office, then the case should have been dismissed for failure to establish ground for equitable relief, as the evidence failed to sustain the allegation that Lucas was in possession, unless he is shown to be entitled to other relief which will be discussed later.   Not being in possession, he was not entitled to an injunction to protect his possession, and that is the only ground for injunction in such cases.

The evidence showed that Futrall was in possession of the Blind School as Superintendent; that when Lucas's term as Superintendent began, he and the President of the Board of Trustees made apt demand upon Futrall to deliver possession to him, but that Futrall refused to surrender it. Lucas spent some time in the building, some time on the grounds, a short time in the Superintendent's office, and made efforts to act as Superintendent, but the evidence indubitably establishes the fact that he did not succeed in ousting Futrall, and that Futrall continued to act as Superintendent of the institution, notwithstanding Lucas's efforts to obtain actual possession of the place and its functions. The failure of the evidence to establish the alleged possession of Lucas ends his right to an injunction, if this position be a public office. If it is not a public office, but is an employment for public service resting in contract, and there is no adequate remedy at law for relief, then it may be that equity could grant the relief prayed where the right was clear and the wrong apparent and otherwise remediless. 4 Pomeroy on Equity Jurisprudence, (3d Ed.), § § 1338, 1341, 1344, 1345.

Therefore it is necessary, in order to determine the case, to decide the exact nature of this position. The act of July 22, 1868, created the Arkansas Institute for the Education of the Blind, and directed that it should be located in the city of Little Rock or its vicinity, and vested the government of it in a board of three trustees, to be appointed by the Governor, who should reside in the city of Little Rock or its vicinity. Many of the provisions of this act, hereinafter mentioned, have been carried forward in the Digest as applicable to the present institution.

The act of March 15, 1879, changed the name of the Arkansas Institute for the Education of the Blind to the Arkansas School for the Blind, and provided that all laws and parts of laws then in force for the former institution should apply to the latter.

The Constitution of 1874, art. 19, § 19, makes it the duty of the General Assembly to provide by law for the support of institutions for the education of the deaf and dumb and for the blind and for the treatment of the insane. As the Constitution left it to the discretion of the General Assembly to provide by law for these purposes, any act which in the judgment of the

Legislature was necessary to effectuate these purposes would have constitutional sanction. Therefore, if the Legislature saw fit to create a public office under this authority, it would not be violating section 9 of art. 19 of the Constitution, which forbids the General Assembly to create any permanent State offices not provided for in the Constitution, as the mandate to provide for the education of the blind necessarily carried with it the power to create what offices the Legislature might deem necessary to carry out the power conferred. Hence there can be no constitutional objection to this being a State office; and the question recurs, whether from its very nature it is an office or an employment.

It is difficult to draw a precise line between a public employment and a public office. It may be best not to attempt any hard and fast rule upon the subject, but rather to keep in mind the controlling principles and apply them to the individual cases as they arise.

The most frequently quoted statement of the principle is from *United States* v. *Maurice, 2* Brock. 96, wherein Chief Justice Marshall said: "An office is defined to be 'a public charge or employment', and he who performs the duties of the office is an officer. * * * Although an office is 'an employment', it does not follow that every employment is an office. A man may certainly be employed under a contract, express or implied, to do an act, or perform a service, without becoming an officer. But if a duty be a continuing one, which is defined by rules prescribed by the government, and not by contract, which an individual is appointed by government to perform, who enters on the duties appertaining to his station, without any contract defining them, if those duties continue, though the person be changed; it seems very difficult to distinguish such a charge or employment from an office, or the person who performs the duties from an officer."

This was quoted with approval and applied in *Vincenheller* v. *Reagan,* 69 Ark. 460.

In *United States* v. *Hartwell,* 6 Wall. 385, it was said: "An office is a public station or employment, conferred by the appointment of government, and embrace the ideas of tenure, duration, emolument, and duties."

In *Hall* v. *Wisconsin,* 103 U. S. 5, it was said: "Where an office is created, the law usually fixes the compensation, pre-

scribes its duties, and requires that the appointee shall give a bond with sureties for the faithful performance of the service required."

*Shelby* v. *Alcorn,* 36 Miss. 273, contains the following: "And we apprehend that it may be stated as universally true, that where an employment or duty is a continuing one, which is defined by rules prescribed by law and not by contract, such a charge or employment is an office, and the person who performs it is an officer?"

The following authorities may be consulted with profit on this subject: Mechem on Public Offices, chap. 2; Throop on Public Offices, chap. 1; 21 Am. & Eng. Enc. 322-4; *United States* v. *Maurice,* 2 Brock. 96; *United States* v. *Hartwell,* 6 Wall 385; *Hall* v. *Wisconsin,* 103 U. S. 5; *Shelby* v. *Alcorn,* 36 Miss. 273, 72 Am. Dec. pp. 179-189, where there is an extensive note reviewing the authorities; *United States* v. *Schlierholz,* 137 Fed. 616; *State* v. *Brennan,* 49 O. St. 33; *State* v. *Wilson,* 29 O. St. 347.

Turning to the case at hand: The various duties of the Superintendent are prescribed by statute (sections 4231-4232-4233-4237-4238-4240-4241.) The act of 1907 providing for the support of the Blind School also lays duties upon the Superintendent. Section 3 provides that all the teachers, officers and employees shall perform such other duties as the Superintendent may direct. Section 4 provides that the Superintendent is impowered, upon approval of the President of the Board, to purchase all supplies of an emergency nature. The Superintendent is required to give bond to the State, with surety to be approved by the Trustees, for the faithful performance of his duties, which bond shall be filed with the Auditor of State. Section 4238, Kirby's Digest.

The act of 1907 appropriates, in the first section, certain sums of money for the support and maintenance of the school for two years, and divides the appropriations into sixty-seven different items, the first of which is as follows: "To pay the salary of the Superintendent, who shall be elected for a term of two years, $1,500 per annum, three thousand dollars." In the third section it is provided: "The board of control shall have power, and is hereby directed, to discharge any officer or em-

ployee of this institution who may be guilty of insubordination, drunkenness or immoral conduct." Sec. 6 of said act reads as follows: "The Board of Trustees of the State charitable institutions shall elect all teachers, officers and employees provided for in section 1 of this act, and they shall discharge the same for failing to faithfully perform their duties and for any conduct unbecoming one holding their positions." In the 10th section it is provided that the salary of no person connected with the institution shall be increased during the period for which they have been elected or employed." Section 11 contains the usual repealing clause of all inconsistent acts. Acts 1907, p. 785.

In the act of 1868 was this provision relating to the powers of the trustees: "They shall have power to elect a superintendent, physician, matron, teachers and steward, who· shall hold their office during the pleasure of the trustees, and receive an annual compensation to be fixed by such trustees, the amount thereof to be reported to the General Assembly." This is found in section 4227 of Kirby's Digest. This part of the act of 1868 is unquestionably repealed by the aforesaid provisions in the act of 1907.

It is said that these acts can stand together, and it is the duty of the trustees to remove for the causes mentioned, and yet that the Superintendent holds at their pleasure. But that is not the rule. Mr. Mechem says: "So it is frequently provided that the executive shall remove only for a specified cause or for cause generally. Where the cause is thus specified, it amounts to a prohibition to a removal for a different cause." Mechem's Public Officers, § 450.

But, aside from this reason, the later statute covers the ground of the former one wherein it fixes the tenure, ground of removal and compensation different from what they were in the former act; and, under the long-settled rule of statutory construction, this necessarily repeals the elder act to that extent.

Therefore it is seen that this position is one where the tenure is fixed by law, and removal authorized only for causes mentioned in the statute; where the compensation is fixed by law; where the duties are prescribed by law, although there may be additional ones prescribed by the board. The duties are continuing, and not affected by a change in the personnel of the incum-

bent. An official bond is required, and the position is filled by election and not by contract. The duties to be performed are of a public nature, being the control of one of the eleemosynary institutions of the State, which was established and is maintained in obedience to constitutional mandate. It is thus seen that every criterion of a public office adheres to this position, and it must be held that the Superintendency of the School for the Blind is a public office.

This leads to the remaining question, whether Lucas is entitled to the office, and, if so, can he have a remedy in this action under the prayer for general relief.

The evidence shows that certain persons, purporting to be a majority of the Board of Trustees, directed Futrall to continue to act as Superintendent, and that his possession was under that authority at the time that Lucas made demand for the possession of the office. It is well settled that individual members of a public body possessing deliberative functions have no authority to bind the body by individual action. The public "have the right to their best judgment after free and full discussion and consultation among themselves of and upon the public matters intrusted to them in the session provided for by the statute." 1 Beach on Public Corporations, 275; *McCortle* v. *Bates,* 29 O. St. 419; *Texarkana* v. *Friedell,* 82 Ark. 531; *School District* v. *Bennett,* 52 Ark. 511; *Burns* v. *Thompson,* 64 Ark. 489. Therefore, the action of the individual members, even if they be a majority of the board, amounts to naught.

It is said that the board on the 8th of October, two days prior to the institution of this suit, by resolution revoked the appointment of Lucas and re-elected Futrall. The determination of this question involves two propositions: First, whether Lucas's tenure could be thus terminated; and, second, whether it was thus terminated. The second proposition involves the determination of the membership of the board, as the proceedings of the board show that the membership from one district was claimed by two gentlemen, and the attempted re-election of Futrall is dependent upon the vote of one of these contestants. But it is unnecessary for the court to go into this matter, even if it be open to question, in this collateral issue, the rights of contesting members of the board; for, as already shown, the

Superintendent does not hold subject to the pleasure of the board, but can only be removed subject to the causes mentioned in the statute.

It is thoroughly settled that where an officer does not hold at pleasure, but holds during good behavior or subject to removal for specified causes, then, before he can be removed, there must be notice and a hearing given to him. Mechem's Public Offices, § 454; 23 Amer. & Eng. Enc. 437, 438; *State* v. *Hixon, 27* Ark. 398 ; *Lee* v. *Huff*, 61 Ark. 494.

There has been no notice to Lucas of any charges preferred against him, and no citation to appear before the board to answer them. The case then stands in this way: Lucas has been elected to a public office for a term of two years, with certain duties prescribed by statute and at a fixed compensation, He can only be removed from that office for the causes specified in the statute authorizing the board to remove him, and then only after notice and a hearing.

He is not in possession of his office, and asks relief of the chancery court; but it is elemental that a chancery court cannot proceed to give relief where there is a plain, complete and adequate remedy at law. Under sections 7981, 7983, 7987, 7988 of Kirby's Digest as construed in *Payne* v. *Rittman,* 66 Ark. 201, and *Whittaker* v. *Watson,* 68 Ark. 555, Lucas's remedy is an action at law in the circuit court for the recovery of his office. This being true, the suit in equity fails.

Had Lucas in this action, when his evidence failed to establish an equitable ground of interference, asked to have his pleadings recast and have the cause transferred to the law court, he would have been entitled to it. But it has not been asked; and, as the chancellor was right in refusing equitable relief, his decree is affirmed without prejudice to a suit at law.

Affirmed.

Mr. Justice HART presided in chancery court, and did not participate herein.