The Honorable Steve Faris State Senator 29476 Highway 67 Malvern, Arkansas 72104
Dear Senator Faris:
I am writing in response to your request for an opinion on four questions concerning the superintendent of the Arkansas School for the Blind also serving as superintendent for the Arkansas School for the Deaf. Specifically, you note that "[o]n June 5, 2003, the members of the Board of Trustees of the Arkansas School for the Blind and the Arkansas School for the Deaf asked the superintendent for the Arkansas School for the Deaf to resign." You state that: "[u]pon the forced resignation of the superintendent for the School for the Deaf, the Board of Trustees appointed the superintendent of the School for the Blind as the interim superintendent for the School for the Deaf." You also state that "[i]t, apparently, is the Board of Trustees' desire to combine the two superintendents' positions at the Deaf and Blind Schools, as they took action on June 24, 2003 and eliminated the position of superintendent of the School for the Deaf."[1] You pose four questions relating to these facts:
 1. Did the Board of Trustees of the Arkansas School for the Blind and the Arkansas School for the Deaf have the authority to force the superintendent of the Deaf School to resign and appoint the superintendent of the School for the Blind as the interim superintendent for the School for the Deaf?
 2. Does the Board of Trustees have the authority to eliminate the position of superintendent for the School for the Deaf and put in place a policy that both schools shall be under the authority of one superintendent?
 3. Are acts of the interim superintendent, while serving in both capacities, void?
 4. What mechanisms can be used to enjoin further personnel changes pending resolution of this matter?
RESPONSE
Your first question actually consists of two disparate questions, which may not be answered together. As for the first part of your first question, it is my opinion that the Board of Trustees is invested with general power to hire and fire the superintendents of the respective institutions committed to its care. The issue of whether the resignation of this particular superintendent for the Arkansas School for the Deaf was "forced" and whether the superintendent was separated from service in accordance with law may involve factual considerations that I cannot resolve in a formal opinion. I therefore express no opinion thereon. In response to the second part of your first question, in my opinion one person may not lawfully serve both as superintendent for the Arkansas School for the Blind and superintendent for the Arkansas School for the Deaf. In my opinion the answer to your second question is "no." In my opinion the answer to your third question is also "no." Your fourth question seeks advice rather than a legal opinion. In my opinion, however, the acts of an ineligible state officer may not be attacked collaterally. In order to prevent such an officer from acting, the dual service itself must be challenged directly, in a proceeding brought for that purpose.
Question 1 — Did the Board of Trustees of the Arkansas School for theBlind and the Arkansas School for the Deaf have the authority to forcethe superintendent of the Deaf School to resign and appoint thesuperintendent of the School for the Blind as the interim superintendentfor the School for the Deaf?
This question joins two issues that must be answered separately. One does not necessarily relate to the other. In my opinion the Board of Trustees of the Arkansas School for the Blind and the Arkansas School for the Deaf has the general power to select the superintendents of the two institutions. See A.C.A. § 6-43-103(b) and A.C.A. § 6-43-208(a). Although nothing in the statutes expressly addresses the termination of the superintendents, it is held as a general rule, absent any constitutional or statutory limitation thereon, that the power to fire is incident to the power to hire. See 63A Am.Jur.2d Public Officers and Employees 221 (1984); 67 C.J.S. Officers and Public Employees 118 (1978); Op. Att'y Gen. Nos. 98-272; 97-211; and 93-221. The issue of whether this particular Superintendent for the Arkansas School for the Deaf was "forced" to resign and whether she was otherwise separated from service in accordance with law may involve factual considerations that I cannot resolve in a formal opinion. I therefore express no opinion on that topic. Despite your joining of the two issues, the legality of the dual service does not control the issue of whether the Superintendent for the School for the Deaf was properly separated from her position. Similarly, any factual or legal issues related to the Superintendent's separation from service do not control the distinct legal question of whether one individual may simultaneously perform the duties of superintendent for the School for the Blind and superintendent for the School for the Deaf. It is my opinion, based upon the applicable law, however, that one individual may not simultaneously perform the duties of both positions. In this regard, the answer to the latter part of your first question is "no."
As an initial matter, A.C.A. § 6-43-103, which was adopted in 1927, contemplates two separate superintendents for the two schools. This section provides as follows:
6-43-103. Superintendents.
 (a) The immediate conduct and management of the Arkansas School for the Blind and the Arkansas School for the Deaf shall be entrusted to superintendents.
 (b) The board of trustees shall select the superintendents of the institutions committed to its care.
 (c)(1) Each of the superintendents shall be required to give bond in a sum fixed by the board, payable to the State of Arkansas, for the faithful discharge of his duties and the proper accounting for all moneys and property coming into his possession as such officer.
 (2) The bonds shall be made by any surety company authorized to do business in Arkansas, approved by the Governor, filed in the office of the Secretary of State, and paid for by the state out of current expenses appropriated by the respective institutions.
 (d) The superintendents of the schools shall be required to give their entire time to the management and operation of their respective institutions and shall be selected because of their previous training and fitness to care for the schools entrusted to their care.
A.C.A. § 6-43-103. (Emphasis added).
This provision clearly implies that each school will have a distinct superintendent. This is evident from the multiple references to plural "superintendents," "each superintendent," and the requirement that the superintendents devote their entire time to the management and operation of "their respective institutions."
In addition, a statutory provision adopted in 1999 requires the maintenance of two separate superintendents. Section 6-43-117 of the Arkansas Code provides as follows:
 The Board of Trustees of the Arkansas School for the Blind and the Arkansas School for the Deaf shall employ and maintain a separate superintendent and secondary principal as authorized by law for each school. In no event shall any one (1) person employed as a superintendent or principal for either school occupy more than one (1) position at one (1) time.
(Emphasis added).
Thus, the Arkansas Code, in Section 6-43-117, expressly prohibits one person from holding the superintendent position for both schools. Although it has been suggested that the legislative intention of this provision was to prohibit a superintendent of one school from also serving as principal at the same school, and not to prohibit a superintendent of one school from serving as a superintendent of the other school, the plain language of this provision unambiguously prohibits either of these configurations. Where a statute is unambiguous, resort to extraneous evidence of legislative intent is improper. Absent some ambiguity, the plain language will control. See e.g., Mountain Home School District No. 9v. T.M.J. Builders, Inc., 313 Ark. 661, 858 S.W.2d 74 (1993). See alsogenerally Roy v. Farmers Merchants Ins. Co., 307 Ark. 213,819 S.W.2d 2 (1991) (where the language of a statute is plain and unambiguous, the court determines legislative intent from the ordinary meaning of the language used).
Some question has been raised about the continued validity of A.C.A. §6-43-117. Section 6-43-117 is the codification of two identical provisions in Acts 1999, Nos. 1012 and 1013 (the appropriation acts for the Arkansas School for the Blind and the Arkansas School for the Deaf for the biennial period ending June 30, 2001). The substantive language in sections 13 and 18 of these acts, respectively, was codified into the Arkansas Code at A.C.A. § 6-43-117. See generally, Arkansas MotorCarriers Association, Inc. v. Pritchett, 303 Ark. 620, 798 S.W.2d 918
(1990) (as to the legality of substantive provisions in appropriation bills). Substantive language contained in appropriation bills, if properly adopted, does not expire at the end of the biennial period. See
Ops. Att'y Gen. 95-219 and 94-201. In my opinion the language found in the 1999 acts was properly codified and is of a permanent nature.
The same language found in the 1999 appropriation acts was repeated verbatim, however, in the subsequent appropriation acts for both schools for the biennial period ending June 30, 2003. See Acts 2001, Nos. 190, § 12 and 191, § 16. In the 2001 appropriation acts, however, each provision concluded by stating that: "[t]he provisions of this section [meaning section 12 of Act 190 of 2001 or section 16 of Act 191 of 2001, as the case may be] shall be in effect only from July 1, 2001 through June 30, 2003." In addition, unlike the similar provisions in the 1999 appropriation acts, the 2001 appropriation acts stated, in introductory language, that the relevant sections were "NOT TO BE INCORPORATED INTO THE ARKANSAS CODE NOR PUBLISHED SEPARATELY AS SPECIAL, LOCAL AND TEMPORARY LAW." As a consequence, the language from the 2001 acts was not codified. The Arkansas Code Revision Commission Notes to A.C.A. §6-43-117 (the codification of the 1999 language), states that "Acts2001, No. 190, § 12 and No. 191, § 16 did not specifically amend or supersede this section."
An issue arises, therefore, as to whether the temporal restriction in the 2001 acts, sometimes referred to as a "sunset clause," has the effect of repealing the codified statute found at A.C.A. § 6-43-117. It is my opinion that it does not.
First, A.C.A. § 6-43-117 has not been expressly repealed. There is no express repealer clause in either of the 2001 acts, nor is there any "general repealer" clause repealing all inconsistent laws. In order to conclude that A.C.A. § 6-43-117 expired on June 30, 2003, one would have to conclude that Acts 2001, Nos. 190 and 191 impliedly repealed A.C.A. §6-43-117. Cases are legion in Arkansas for the proposition that implied repeals are not favored. Such repeals will never be allowed unless a legislative intent to repeal appears clearly and plainly, see RicelandFood v. Second Injury Fund, 289 Ark. 528, 715 S.W.2d 432 (1986); Davisv. Cox, 268 Ark. 78, 593 S.W.2d 180 (1980), or unless the old and new laws are so repugnant to one another that both cannot stand. See Donohov. Donoho, 318 Ark. 637, 887 S.W.2d 290 (1994); and Thomas v. State,315 Ark. 518, 868 S.W.2d 85 (1994). It has been held that the legislature will not be held to have changed a law it did not have under consideration while enacting a later law, unless the terms of the subsequent act are so inconsistent with the prior law that they cannot stand together. Arnold v. City of Jonesboro, 227 Ark. 832, 302 S.W.2d 91
(1957). See also Sutherland, Stat. Const. 22.13 (4th Ed). Implied repeals will only be found where the conflict is clear and irresistible, or where the legislature takes up the whole subject matter anew and intends a latter enactment as a substitute for the former. Arkansas Day CareAss'n., Inc. v. Clinton, 577 F. Supp. 388 (E.D.Ark. 1983), and Nance v.Williams, 263 Ark. 237, 564 S.W.2d 212 (1978). I cannot conclude that this is the case with regard to the codified provisions of A.C.A. §6-43-117.
Second, as noted above, the Arkansas Code Revision Commission has not seen fit to omit A.C.A. § 6-43-117 from the Arkansas Code. Obviously, the Commission does not consider Acts 2001, Nos. 190 and 191 to have repealed A.C.A. § 6-43-117. The Arkansas Supreme Court has referred to such notes as additional support in construing state statutes. See e.g., Bush v.State, 338 Ark. 772, 781, 2 S.W.3d 761(1999).
In any event, as noted above, at least one other state statute (placed into law in 1927 and apparently never amended) contemplates that two separate individuals will serve as superintendent at the respective institutions. See A.C.A. § 6-43-103.
The Arkansas Constitution also in all likelihood compels this result. Article 19 § 6 of the Arkansas Constitution provides as follows:
 No person shall hold or perform the duties of more than one office in the same department of the government at the same time, except as expressly directed or permitted by this Constitution.
With regard to this provision (and the so-called "separation of powers" doctrine found at Arkansas Constitution, art. 4, §§ 1 and 2), the Arkansas Supreme Court has stated:
 The object of these several provisions is to emphasize the fact that the officers and offices of the state are divided into three great classes, the legislative, the executive, and the judicial. And the further fact that a person cannot at the same time exercise the duties of more than one office in either of these departments; neither can he exercise the duties of an office in one of these departments, and at the same time those of an office in either one of the other two departments. It follows that, in so far as regards the offices contemplated in these provisions of the constitution, there is a perfect and absolute inhibition against holding two offices at one and the same time, with the exception named in section 26, article 19.
State ex. rel. Murphy v. Townsend, 72 Ark. 180, 79 S.W. 782 (1904).
The position of superintendent for the Arkansas School for the Blind has been held to be an "office." Lucas v. Futrall, 84 Ark. 540,106 S.W. 667, 670 (1907). The court in Lucas reviewed various authorities distinguishing between "offices" and "employments," to the effect that "[a]n office is a public station or employment, conferred by the appointment of government, and embrace[s] the ideas of tenure, duration, emolument and duties" (Id., citing United States v. Hartwell, 6 Wall. 385), and that "[w]here an office is created, the law usually fixes the compensation, prescribes its duties, and requires that the appointee shall give a bond with sureties for the faithful performance of the service required," citing Hall v. Wisconsin, 103 U.S. 5.
This law has not changed since the rendering of the Lucas decision in 1907. See e.g. Maddox v. State, 220 Ark. 762, 249 S.W.2d 972 (1952) (a public officer ordinarily exercises some part of the State's sovereign power. His tenure of office, his compensation, and his duties are usually fixed by law. The taking of an oath of office, the receipt of a formal commission, and the giving of a bond all indicate that a public office is involved, although no single factor is ever conclusive). See alsoMartindale v. Honey, 259 Ark. 416, 533 S.W.2d 198 (1976).
The Lucas court concluded by stating that:
 The various duties of the Superintendent are prescribed by statute. . . . The act of 1907 providing for the support of the Blind School also lays duties upon the Superintendent. Section 3 provides that all the teachers, officers and employees shall perform such other duties as the Superintendent may direct. Section 4 provides that the Superintendent is impowered [sic], upon approval of the President of the Board, to purchase all supplies of an emergency nature. The Superintendent is required to give bond to the State, with surety to be approved by the Trustees, for the faithful performance of his duties which bond shall be filed with the Auditor of State. . . .
* * *
 Therefore it is seen that this position is one where the tenure is fixed by law, and removal authorized only for causes mentioned in the statute; where the compensation is fixed by law; where the duties are prescribed by law, although there may be additional ones prescribed by the board. The duties are continuing, and not affected by a change in the personnel of the incumbent. An official bond is required, and the position is filled by election and not by contract. The duties to be performed are of a public nature, being the control of one of the eleemosynary institutions of the State, which was established and is maintained in obedience to constitutional mandate. It is thus seen that every criterion of a public office adheres to this position, and it must be held that the Superintendency of the School for the Blind is a public office.
Id. at 548, 549-50.
In my opinion this characterization is still true under current law and applies to the superintendents of each school. Each superintendent serves by appointment of the Board. See A.C.A. § 6-43-103(b). The duties of each superintendent are addressed by law. See A.C.A. §§ 6-43-103; 6-43-104;6-43-108; 6-43-210; 6-43-212; 6-43-223; 6-43-306; 6-43-311. Each is required to give a bond for the faithful performance of his or her duties. A.C.A. § 6-43-103(c). In my opinion, the duties performed are of a public nature and involve the exercise of "sovereign power."
Each superintendent therefore serves as an officer of the executive department of state government.[2] As a consequence, Arkansas Constitution, art. 19, § 6 prohibits one person from simultaneously holding or performing the duties of both offices.[3] My predecessor reached a similar conclusion in Op. Att'y Gen. 99-376 for the same reason. See Op. Att'y Gen. 99-376 (Board of Correction and Community Punishment may not legally or constitutionally appoint the Director of the Department of Correction to administer the Department of Community Punishment and serve simultaneously in both positions).
In my opinion, therefore, the answer to the latter part of your first question is "no," the Board did not have authority to appoint the Superintendent of the School for the Blind as interim superintendent for the Arkansas School for the Deaf.
Question 2 — Does the Board of Trustees have the authority to eliminate the position of superintendent for the School for the Deaf and put in place a policy that both schools shall be under the authority of one superintendent?
There is apparently some factual dispute as to whether this has occurred or is the intention of the Board. See n. 1, supra. In my opinion, however, the answer to this question is "no"; absent an amendment of the applicable statutes, the Board does not have this authority.
As set out previously, Section 6-43-103 of the Arkansas Code provides that "[t]he immediate conduct and management of the Arkansas School for the Blind and the Arkansas School for the Deaf shall be entrusted to superintendents" and that "[t]he Board of Trustees shall select the superintendents of the institutions committed to its care." It also provides that the superintendents "shall be required to give their entire time to the management and operation of their respective institutions. . . ." This statutory language clearly contemplates two separate superintendents, one for each institution. In my opinion the Board may not, without statutory authorization, eliminate one position and place both institutions under the direction of one superintendent. In my opinion the answer to your second question is therefore "no."
Question 3 — Are acts of the interim superintendent, while serving inboth capacities, void?
In my opinion the answer to this question is "no." Although your second question above inquires as to the legality of "combining" the two superintendent positions into one position, your third question apparently assumes the continued existence of two separate positions held by one individual. In my opinion the acts of such individual are not void.
Even though an officer is ineligible to hold an office, as long as he was elected or appointed under color of law he may serve and validly act as a "de facto" officer while he is permitted to retain the office. This so-called "fiction of law" has been summarized by the Arkansas Supreme Court as follows:
 A person who enters into an office and undertakes the performance of the duties thereof by virtue of an election or appointment, is an officer de facto though he was ineligible at the time he was elected or appointed, or has subsequently become disabled to hold the office. Indeed, it is settled by a current of authority almost unbroken for over 500 years in England and this country, that ineligibility to hold an office does not prevent the ineligible incumbent, if in possession under color of right and authority, from being an officer de facto with respect to his official acts, in so far as third persons are concerned.
Pennington v. Oliver, 245 Ark. 251, 254, 431 S.W.2d 843 (1968), quotingFaucette, Mayor v. Gerlach, 132 Ark. 58, 200 S.W. 279 (1918).
Thus, an officer who is in possession and exercising the duties of an existing office, if he or she has at least a fair color of right or title to the office (through, for example, election or appointment to the position by the legally constituted authority) is a de facto officer. As such the actions of such person are not "void ab initio," but rather are "valid and effectual, while he is permitted to retain the office, as though he were an officer by right." Appleby v. Belden Corp.,22 Ark. App. 243, 247, 738 S.W.2d 807 (1987). See also Op. Att'y Gen.93-031.
In my opinion, therefore, the actions of the superintendent are valid and effectual while he is permitted to retain both positions.
Question 4 — What mechanisms can be used to enjoin further personnelchanges pending resolution of this matter?
You question presumably refers to some personnel changes (or the elimination of personnel positions) made by the Board and/or the Superintendent after the resignation of the former Superintendent of the School for the Deaf. Your fourth question appears to seek legal advice (i.e. "[w]hat mechanisms can be used . . ."), rather than an opinion as to the state of the law. It is not the province of the Attorney General, in the formal opinions process, to provide such advice. I can set out, however, a general recitation of the law regarding the available remedies for stopping the actions of an officer de facto.
Although, as set out above, the actions of an ineligible officer who serves as an officer de facto are valid and effectual, a de facto officer is nonetheless a usurper and can be removed from office in the manner provided by law. See e.g., Sitton v. Burnett, 216 Ark. 574, 226 S.W.2d 544
(1950).
It is often stated in this regard that the actions of a "de facto" officer cannot be challenged "collaterally." Chronister v. State,55 Ark. App. 93, 931 S.W.2d 944 (1996) and Appleby v. Belden Corp.,22 Ark. App. 243, 738 S.W.2d 807 (1987). That is, actions taken by such an officer cannot be challenged in a proceeding collateral to the eligibility of the officer. Rather, the qualifications of a "de facto" officer must be challenged directly, in a direct proceeding to remove the officer from his post. Id.
As a consequence, in order to prevent such an officer from acting, his actions may not be attacked or "enjoined" collaterally. If his actions are to be stopped, a direct action must be brought to remove him from office. There are several available mechanisms to effect this result.
First, an ineligible state officer can be removed through a quo warranto
proceeding, which is an ancient common law proceeding that must be instituted by the state. See Moody v. Lowrimore, 74 Ark. 421, 86 S.W. 400
(1905).
Second, an ineligible state officer can be removed from office through a usurpation action under the provisions of A.C.A. § 16-118-105, which must be instituted, as to state officers, by the Attorney General. The statutory usurpation action is "in lieu of" a writ of quo warranto. SeeState ex rel. Robinson v. Jones, 194 Ark. 445, 108 S.W.2d 901 (1937). The Arkansas Supreme Court has held that de facto officers are "usurpers" within the meaning of the usurpation statute and can therefore be removed under its authority. See Looper v. Thrash, 334 Ark. 212, 972 S.W.2d 250
(1998).
Finally, a taxpayer may institute an "illegal exaction" lawsuit under the provisions of Ark. Const. art. 16, § 13, seeking to protect the state's revenue, to enjoin the officer from serving, or to have the officer declared ineligible to serve. See Spradlin v. Arkansas EthicsCommission, 314 Ark. 108, 858 S.W.2d 684 (1993) (taxpayer suit utilized to challenge an appointment to the Ethics Commission); Beshear v.Ripling, 292 Ark. 79, 728 S.W.2d 170 (1987) (taxpayer suit challenging the payment of salary to one allegedly unlawfully in office); Jones v.Clark, 278 Ark. 119, 644 S.W.2d 257 (1983) (taxpayer suit challenging the Attorney General's holding of a military position in violation of the Constitution of Arkansas); and White v. Hankins, 276 Ark. 562,637 S.W.2d 603 (1982) (taxpayer suit wherein a gubernatorial appointment to the Arkansas Highway Commission was challenged on grounds that the appointee's residence made him ineligible to serve).
In my opinion therefore, the actions of the Superintendent may not be "enjoined." His actions will be valid while he is permitted to retain the office. In order to prevent him from acting, he must be removed from the position in a direct proceeding brought for that purpose.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] There is apparently some factual dispute on this point. Subsequent correspondence provided this office by a board member asserts that the Board in fact "created two half-time positions at both schools." See
"Response to Mr. Tom Gay's `Unofficial Opinion' Letter of June 26, 2003," presented to the Arkansas Legislative Performance Review Committee by board member Dr. William Payne.
[2] The constitutional prohibition contained in art. 19, § 6 prevents the holding or performance of the duties of two offices in the executive department of state government, two offices in the legislative department of state government, or two offices in the judicial department of state government. The prohibition is not aimed more narrowly, as Dr. Payne seems to suggest in his correspondence (see n. 1, supra), at the holding of two offices within the same state agency.
[3] Dr. Payne suggests in his correspondence (see n. 1, supra), that rules and regulations of the State Board of Education authorize a "half-time superintendent" at any school with an enrollment of three hundred students or less. See, "Standards for Accreditation of Arkansas Public Schools" Section X(A) (Revised Ed. 2000). Even assuming that this suggestion is correct, these administrative regulations do not purport to, and in fact could not, authorize one individual to hold both superintendent positions at the Arkansas School for the Blind and the Arkansas School for the Deaf where state statutes and the Arkansas Constitution prohibit it.