

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-899

| | | |
|---|---|---|
| TOBY LAPOINTE | | **Opinion Delivered** June 4, 2014 |
| | APPELLANT | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. CV-13-1221] |
| V. | | |
| | | HONORABLE JOHN R. SCOTT, JUDGE |
| NEW TECHNOLOGY, INC. | | |
| | APPELLEE | AFFIRMED; MOTION TO DISMISS GRANTED IN PART |

## ROBERT J. GLADWIN, Chief Judge

This is an interlocutory appeal from the Benton County Circuit Court's order granting a preliminary injunction to prevent appellant Toby LaPointe from using or disclosing the trade secrets of appellee New Technology, Inc. (NTI).[1] On appeal, LaPointe argues that the trial court failed to perform a proper analysis of whether the information constituted trade secrets and that the court clearly erred in finding that the information constituted trade secrets. He also argues that the trial court erred in awarding attorney's fees of $5000 before a trial on the merits and without making any factual findings of bad faith or willful misconduct. After LaPointe admitted in his reply brief that the attorney's fees had been paid, NTI filed a motion to dismiss on the grounds that the attorney's fees had been

---

[1]Arkansas Rule of Appellate Procedure–Civil 2(a)(6) (2013) permits an appeal to be taken from an interlocutory order by which an injunction is granted.

voluntarily paid. We affirm the preliminary injunction and grant the motion in part to dismiss as to the attorney's fees.

NTI is an Arkansas corporation that manufactures dies and other machine parts for pet-food manufacturers. LaPointe's father started the company; in 2008, he sold all his stock to Blaine and Lori Russell and Bradley and Melanie Bryant. LaPointe was an employee of NTI both before and after the sale, and in 2011, his father forgave a portion of the debt owed from the sale in exchange for LaPointe's receiving a one-third ownership of the outstanding stock of NTI. LaPointe was vice president of sales for NTI, and on August 1, 2013, in a letter from his attorney, he "resigned as an employee" of NTI and offered to sell his stock in the company for $1 million. He was still an owner and member of the board of directors, and he remained so at the time of the preliminary-injunction hearing.

In June 2013, before his resignation, LaPointe met with Matt James and Mike James, who owned a manufacturing company, M&M, about the possibility of starting a new business. In late July 2013, the three men formed a Minnesota corporation, LaPointe Manufacturing, to directly compete with NTI. Before resigning his employment with NTI, LaPointe secretly downloaded computer-aided design (CAD) files for each NTI customer to flash drives and mailed them to the customers; he later gave the customers the option of sending him the drawings on the flash drive to be used in his competing business. According to Blaine Russell, it was not NTI's normal practice to provide customers with the CAD drawings.

On August 12, 2013, NTI filed a complaint in the Benton County Circuit Court alleging that LaPointe had misappropriated NTI's trade secrets and asserted the following

causes of action: (1) breach of fiduciary duty; (2) tortious interference with contractual relationships and business expectancies; and (3) misappropriation of trade secrets. The alleged trade secrets included computer designs and products (custom molds, custom machining and tooling along with prototype engineering of precision machine parts), customer information (customer lists, contact names, and telephone numbers), and pricing information (including profit margins). NTI requested preliminary and permanent injunctive relief and damages in excess of $75,000. On the same day, based on the pleadings and attached affidavits, the trial court granted NTI an ex parte temporary-restraining order, and the court set a hearing on the request for a preliminary injunction.

At the conclusion of the preliminary-injunction hearing, the trial court ruled from the bench as follows:

> Neither party objected to the Court's suggestion to take judicial notice of the allegation in the companion complaint, Case No. CV-2013-1293, that the defendant is and was at all times material to this litigation a director of the plaintiff. And the defendant testified that he was an officer, vice president of sales, and had not resigned.

> The law in Arkansas is clear that a director and an officer owes a fiduciary duty to the employer and/or corporation of which he is a director and officer. That principle was clearly enunciated in the case of *Wal-Mart Stores, Inc. v. Thomas M. Coughlin*, 255 S.W.3d 425. That opinion – standing for that proposition – also cites older authority that an officer and director has a greater fiduciary duty and a higher standard of conduct than anyone else to a corporation. Those obligations are also stated in the Arkansas Business Corporation Act.

> It is the finding of this Court that if the plaintiff's request for a Temporary Restraining Order is not granted, it will be irreparably harmed, and that there is a substantial likelihood of success upon a trial of this case. Therefore, the plaintiff's request for a Temporary Restraining Order is granted, and the defendant is hereby prohibited from using or disclosing the plaintiff's trade secrets relating to computer-aided design, what we had referred to today as CAD; computer numerically controlled programming; customer machining and tooling, along with the prototype engineering of precision machine parts; custom molds; related drawings; customer list;

3



customer contact names; customer contact numbers; customer contact addresses, including e-mails; and the plaintiff's pricing, margins and profit margins.

The defendant is further ordered to return to the plaintiff within 24 hours of this time, 2:45 p.m. tomorrow, Central Standard Time, all of the plaintiff's property currently in the defendant's possession. The defendant is further ordered to purge his personal telephone of all of the plaintiff's contact information as to its customers' addresses, telephone numbers, fax numbers, and e-mail addresses. The defendant may either submit this telephone to an independent computer evaluator selected by the plaintiff for verification of compliance with this portion of the Court's order, which verification shall be paid by the defendant within 24 hours, or the defendant may submit his telephone to the plaintiff for the plaintiff to purge the defendant's telephone at the plaintiff's expense of the plaintiff's information. The plaintiff is further [awarded] a partial attorney's fee of $5,000.

The court's ruling was memorialized in a written preliminary-injunction order entered on September 9, 2013. LaPointe appeals from that order.

Our supreme court has set out the applicable standard of review for a preliminary injunction as follows:

In determining whether to issue a preliminary injunction pursuant to Rule 65, the trial court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. This court reviews the grant of a preliminary injunction under an abuse-of-discretion standard. The standard of review is the same for the two essential components of a preliminary injunction: irreparable harm, and likelihood of success on the merits. There may be factual findings by a circuit court that lead to conclusions of irreparable harm and likelihood of success on the merits, and those findings shall not be set aside unless clearly erroneous. But a conclusion that irreparable harm will result or that the party requesting the injunction is likely to succeed on the merits is subject to review under an abuse-of-discretion standard.

When an appeal reaches a court via an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. The sole question before the appellate court is whether the circuit court "departed from the rules and principles of equity in making the order," and not whether the appellate court would have made the order.



*Baptist Health v. Murphy*, 365 Ark. 115, 121–22, 226 S.W.3d 800, 806–07 (2006) (internal citations omitted).

I. *Whether the Trial Court Abused Its Discretion in Granting the Preliminary Injunction*

LaPointe argues that the trial court erred in granting the preliminary injunction because it failed to apply the six factors set out by our supreme court to determine whether confidential information constitutes a trade secret and failed to consider whether NTI had made specific efforts to restrict the postemployment disclosure of its confidential information.

Arkansas Code Annotated section 4-75-601(4) (Repl. 2011) defines a "trade secret" as:

> information, including a formula, pattern, compilation, program, device, method, technique, or process, that:
>
> (A) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (B) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

In addition to the statute, our supreme court has endorsed a six-factor analysis in determining whether information qualifies as a trade secret: (1) the extent to which the information is known outside the business; (2) the extent to which the information is known by employees and others involved in the business; (3) the extent of measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and to its competitors; (5) the amount of effort or money expended by the appellee in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Saforo & Assocs., Inc. v. Porocel Corp.*, 337 Ark. 553, 991

SLIP OPINION

S.W.2d 117 (1999). Furthermore, in *ConAgra, Inc. v. Tyson Foods, Inc.*, 342 Ark. 672, 30 S.W.3d 725 (2000) (*ConAgra I*), and *Tyson Foods, Inc. v. ConAgra, Inc.*, 349 Ark. 469, 79 S.W.3d 326 (2002) (*ConAgra II*), the supreme court made it clear that a company must make reasonable efforts to restrict postemployment disclosure of confidential information for that information to be a trade secret.

LaPointe argues that NTI failed to take reasonable steps to protect its confidential information both during and after his employment. Specifically, he points to the following: NTI did not require its customers to sign confidentiality agreements; on August 5, 2013, NTI sent a mass email to the majority of its customers without viewer protection, so that each customer could see the email address of every other customer on the list; there was no evidence that the stock purchase agreement with Dan LaPointe included a confidentiality agreement; NTI did not require its employees to sign covenants not to compete, and there is no evidence that NTI took any other measures to prevent postemployment disclosure of its confidential information; there was no evidence that NTI's CAD drawings included any mark or logo indicating that the drawings were trade secrets; and the names of NTI's customers are available to the public on the backs of pet-food packages and online, among other places.

NTI responds that it did use reasonable efforts to maintain the secrecy of its confidential information—the only individuals with access to NTI's confidential information were its owners and members of their immediate famililies, who were also employees of NTI, and that information was "securely stored behind a computer firewall and was password protected." NTI cites *Allen v. Johar, Inc.*, 308 Ark. 45, 823 S.W.2d 824 (1992), for the

proposition that keeping customer lists and files "confidential"—meaning that they were not to leave the premises and old customer printouts were destroyed—is sufficient to support a finding of trade secrets in the absence of a postemployment agreement. NTI distinguishes *ConAgra I* and *ConAgra II, supra*, on the ground that they involved "mere employees" of Tyson and not the owners and directors of a closely held corporation.

Arkansas jurisprudence "imposes a high standard of conduct upon an officer or director of a corporation . . . ." *Wal-Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 369, 255 S.W.3d 424, 428 (2007) (quoting *Raines v. Toney*, 228 Ark. 1170, 1178, 313 S.W.2d 802, 808 (1958)). Our supreme court imposes an even greater duty on a person who serves as both an officer and a director of a corporation. *Id.* Individuals "cannot while still corporate fiduciaries set up a competitive enterprise". *Raines*, 228 Ark. at 1180, 313 S.W.2d at 809. We cannot say that the trial court clearly erred in finding that NTI's confidential information constituted trade secrets for this closely held corporation with few employees. We hold that the trial court did not clearly err in finding that, as a director and an officer, LaPointe had a fiduciary duty to the corporation, nor did it abuse its discretion in finding the requisite irreparable harm and likelihood of success on the merits. Therefore, we affirm the trial court's order granting a preliminary injunction.

II. *Motion to Dismiss/Whether the Trial Court Erred in Awarding Attorney's Fees*

For his second point on appeal, LaPointe argues that the trial court erred in awarding attorney's fees to NTI prior to making a final ruling on the merits of the case and without making any factual findings of bad faith or willful misconduct under the Arkansas Trade Secrets Act, Ark. Code Ann. § 4-75-607, or applying the factors set out in *Chrisco v. Sun*

7

*Industries, Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). NTI has filed a motion to dismiss the appeal, arguing that LaPointe's voluntary payment of the attorney's fees awarded in the preliminary injunction renders the appeal moot.[2] NTI cites *Lytle v. Citizens Bank*, 4 Ark. App. 294, 630 S.W.2d 546 (1982), in which this court stated that if the appellant's payment of the judgment appealed from was voluntary, then the case was moot, but if the payment was involuntary, the appeal was not precluded. In that case, because the appellant had not even attempted to file a supersedeas bond, but had instead paid the judgment in full, the court held that the payment was voluntary and the appeal was moot. *See also Shepherd v. State Auto Prop. and Cas. Ins. Co.*, 312 Ark. 502, 850 S.W.2d 324 (1993) ("We view voluntary payment of a judgment amount assessed against a party as entirely inconsistent with a subsequent appeal directly related to that payment.").

LaPointe responds that the rule relating to the voluntary payment of a final judgment has no application here, particularly when he made the payment under threat of being held in contempt. It is true that the order required LaPointe to pay attorney's fees to NTI in the amount of $5000 within ten days of the entry of the order and stated that failure to comply with the order "may result in a finding of contempt of Court," although that statement was not directed specifically toward the payment of attorney's fees. LaPointe did not petition the trial court to approve a supersedeas bond for the attorney's fees pursuant to Ark. R. App. P.–Civ. 8. In fact, he did not ask the court for permission to make his payment into the registry of the court pending this appeal or attempt to make any other arrangements to stay

---

[2]NTI seems to argue that the appeal should be dismissed in its entirety based on LaPointe's voluntary payment of attorney's fees, but we limit our holding to the attorney-fee award.



the attorney-fee award. Instead, LaPointe voluntarily paid NTI the amount ordered. Under these circumstances, we grant NTI's motion to dismiss as to the attorney's fees and dismiss LaPointe's second point on appeal as moot.

Affirmed; motion to dismiss granted in part.

WALMSLEY and HARRISON, JJ., agree.

*Friday, Eldredge & Clark, LLP*, by: *R. Christopher Lawson* and *Elizabeth Robben Murray*, for appellant.

*Mitchell, Williams, Selig, Gates & Woodyard, P.L.L.C.*, by: *Marshall S. Ney*, *Clayborne S. Stone*, and *Alex T. Gray*, for appellee.