Rule 65 of the Arkansas Rules of Civil Procedure governs the issuance of preliminary injunctions. In determining whether to issue a preliminary injunction pursuant to Rule 65, the circuit court must consider two issues: (1) whether irreparable harm will result in the absence of an injunction or restraining order and (2) whether the moving party has demonstrated *666 a likelihood of success on the merits. Ark. Dep't of Human Servs. v. Ledgerwood , 2017 Ark 308, 530 S.W.3d 336.
This court reviews the grant of a preliminary injunction under an abuse-of-discretion standard. Baptist Health v. Murphy , 365 Ark. 115, 226 S.W.3d 800 (2006). When an appeal reaches an appellate court via an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. Id. , 226 S.W.3d 800. The sole question before the appellate court is whether the circuit court departed from the rules and principles of equity in making the order and not whether the appellate court would have made the order. Id. at 121-22, 226 S.W.3d at 806-07.
A. Subject-Matter Jurisdiction
We first address the alternative argument raised by the City. The City contends that the circuit court did not have subject-matter jurisdiction because Smith failed to exhaust her administrative remedies. Specifically, the City asserts that because Smith failed to exhaust her administrative remedies, the circuit court lacked subject-matter jurisdiction, and this court must dismiss the appeal.
The City's argument is actually an argument involving a plaintiff's standing to bring an illegal-exaction lawsuit. Article 16, section 13 of the Arkansas Constitution provides that "[a]ny citizen of the county, city or town may institute suit, in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever." An illegal exaction is defined as any exaction that either is not authorized by law or is contrary to law. Wilson v. Walther , 2017 Ark. 270, 527 S.W.3d 709. In a "public funds" illegal-exaction case, such as the one before us, the plaintiff contends that public funds generated from tax dollars are being misapplied or illegally spent. Id. , 527 S.W.3d 709. We have explained that citizens have standing to bring a "public funds" case because they have a vested interest in ensuring that the tax money they have contributed to a state or local government treasury is lawfully spent. Id. This court has explained that
the only standing requirements we have imposed in public-funds cases [are] that the plaintiff be a citizen and that he or she have contributed tax money to the general treasury. We have not required the plaintiff to trace his or her individual tax contribution to the tax money that is allegedly being spent in an illegal manner, nor have we required the plaintiff to establish a significant tax contribution to the state treasury. Hence, in public-funds cases we have given the word "interested" as used in article 16, section 13, a very broad construction.
2017 Ark. 270, at 5-6, 527 S.W.3d at 713 (quoting Bowerman v. Takeda Pharms. U.S.A. , 2014 Ark. 388, at 5, 442 S.W.3d 839, 842-43 (citations omitted)).
Here, Smith brought her illegal-exaction lawsuit as a citizen and taxpayer of the City on behalf of other citizens and taxpayers of the City. Accordingly, we hold that Smith has standing in this action.
B. Justiciability
The City also makes a general justiciability argument and states that the "Declaratory Judgement Act ... was not intended to allow any question to be presented by any person, for the matter must first be justiciable."
Our declaratory-judgment statute provides that "[a]ny person ... whose rights, status or other legal relations are affected by a statute ... may have determined any question of construction or validity arising *667 under the ... statute ... and obtain a declaration of rights, status or other legal relations thereunder." Ark. Code Ann. § 16-111-102 (Repl. 2016).
Here, the circuit court has not ruled on Smith's underlying declaratory-judgment action, but it granted Smith's request for entry of a preliminary injunction. In its order granting preliminary injunction, the circuit court found that Smith had met her burden of establishing both a likelihood of success on the merits of her claims and the existence of irreparable harm in the absence of injunctive relief. This court has stated that "[a] party thus is not required to prove his [or her] case in full at a preliminary-injunction hearing." Ledgerwood , 2017 Ark. 308, at 9, 530 S.W.3d at 342 (quoting Univ. of Tex. v. Camenisch , 451 U.S. 390, 395, 101 S.Ct. 1830, 68 L.Ed.2d 175 (1981) ). Accordingly, we conclude that Smith presents a justiciable controversy.
C. Likelihood of Success on the Merits
1. Arkansas Constitution
This court has long held that, "to justify a grant of preliminary injunction relief, a plaintiff must establish that it will likely prevail on the merits at trial." Ledgerwood , 2017 Ark. 308, at 11, 530 S.W.3d at 344. The test for determining the likelihood of success is whether there is a reasonable probability of success in the litigation. Id. Such a showing "is a benchmark for issuing a preliminary injunction." Id.
a. Elected or appointed office
The gravamen of Smith's complaint and underlying action seeking declaratory judgment and illegal exaction is that Herweg is ineligible to hold office as Jacksonville's police chief. Because Herweg was appointed by the mayor, the first question is whether article 5, section 9 applies to an appointed official. Article 5, section 9 of the Arkansas Constitution provides,
(a) No person convicted of embezzlement of public money, bribery, forgery or other infamous crime is eligible to the General Assembly or capable of holding any office of trust or profit in this State.
(b) As used in this section, "infamous crime" means:
...
(4) A misdemeanor offense in which the finder of fact was required to find, or the defendant to admit, an act of deceit, fraud, or false statement, including without limitation a misdemeanor offense related to the election process.
The standard of review for cases involving the interpretation of a constitutional provision states as follows:
When interpreting the constitution on appeal, our task is to read the laws as they are written, and interpret them in accordance with established principles of constitutional construction. Brewer v. Fergus , 348 Ark. 577, 79 S.W.3d 831 (2002). It is this court's responsibility to decide what a constitutional provision means, and we will review a lower court's construction de novo. Id. We are not bound by the decision of the trial court; however, in the absence of a showing that the trial court erred in its interpretation of the law, that interpretation will be accepted as correct on appeal. Id. Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. Worth v. City of Rogers , 341 Ark. 12, 14 S.W.3d 471 (2000) ; Daniel v. Jones , 332 Ark. 489, 966 S.W.2d 226 (1998). Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. Daniel v. Jones (quoting *668 Foster v. Jefferson County Quorum Court , 321 Ark. 105, 108, 321 Ark. 116-A, 901 S.W.2d 809, 810 (1995) ).
State v. Oldner , 361 Ark. 316, 326, 206 S.W.3d 818, 821-22 (citing Smith v. Sidney Moncrief Pontiac, Buick, GMC Co. , 353 Ark. 701, 720, 120 S.W.3d 525, 537 (2003) ).
Article 5, section 9 of the Arkansas Constitution expressly provides that it applies to "any office of trust or profit in this State." Based on this court's rules of interpretation, the word "any" is plain and unambiguous. Thus, we construe "any" to include both elected and appointed offices.
b. Office of the chief of police
The next question is whether article 5, section 9 of the Arkansas Constitution applies to the office of the chief of police. This court has not defined the term, "any office of trust or profit." Ark. const. art. 5, § 9. Nevertheless, this court has stated that with the privilege of holding public office comes certain responsibilities and power unique to the specific office. Allen v. State , 327 Ark. 350, 939 S.W.2d 270 (1997). We further stated that a public office is a public trust, and funds officially received are trust funds. Id. at 359-60, 939 S.W.2d at 275.
Pursuant to Arkansas Code Annotated section 14-42-110(a) (Repl. 2013), Mayor Fletcher appointed Herweg as Jacksonville's chief of police. Arkansas Code Annotated section 14-52-202 provides,
(a) The chief of police in a municipality shall execute all process directed to him or her by the mayor and shall attend by himself or herself or by someone else on the police force on the sitting of the district court to execute its orders and preserve order therein.
(b)(1) The chief of police has power to appoint one (1) or more deputies from the police force, for whose official acts he or she is responsible, and by whom he or she may execute all process directed to him or her.
(2)(A) He or she shall have power, by himself or herself or by deputy, to execute all process in any part of the county in which the district court is situated or in which the district court has jurisdiction.
(B) The person executing process under this subdivision (b)(2) shall work in coordination with the sheriff for the unincorporated areas of the county.
(3) For serving city warrants only, the chief of police or his or her deputies shall be entitled to the fees allowed to a sheriff under § 21-6-307 for similar services in similar cases.
(4) All fees collected by the police chief and his or her deputies for similar services shall be deposited into the city treasury.
(c) It is the chief of police's duty to suppress all riots, disturbances, and breaches of the peace. To that end he or she may call upon the citizens to assist him or her to apprehend all persons in the act of committing any offense against the laws of the state or the ordinances of the city, and he or she shall bring them immediately before the proper authority for examination or trial.
(d) The chief of police has power to pursue or arrest any person fleeing from justice in any part of the state and to receive and execute any proper authority for arrest and detention of criminals fleeing or escaping from any other place or state.
(e) In the discharge of his or her proper duties, the chief of police has like powers and is subject to like responsibilities as sheriffs and constables in similar cases and is required by the city council to give a bond for the faithful performance of his or her duties in a sum as the council may require.
*669 Pursuant to section 14-52-202, municipal police chiefs are charged with these duties specific to the office of chief of police. Here, Herweg testified that when he was appointed as the City's police chief, he took an oath of office and posted a bond. We hold that the circuit court properly found that the office of chief of police constitutes an "office of trust" pursuant to article 5, section 9 of the Arkansas Constitution.
c. Herweg's eligibility for office and his 2002 Texas conviction
We now examine whether Herweg's 2002 Texas conviction is an "infamous crime" under article 5, section 9 that precludes his eligibility to serve as Jacksonville's police chief. The City contends that infamous crime includes misdemeanor offenses "related to the election process" and not to a "fifteen-year-old conviction of a Class B misdemeanor in Texas."
In Edwards v. Campbell , 2010 Ark. 398, 370 S.W.3d 250, this court examined the meaning of "infamous crime" under article 5, section 9, of the Arkansas Constitution and stated,
[T]his court concluded in Oldner that the framers of the Arkansas Constitution intended for an "infamous crime," when used in article 5, section 9, to include crimes involving elements of deceit and dishonesty. Additionally, this court embraced the notion in Oldner that infamous crimes are those that impugn the integrity of the office and directly impact the person's ability to serve as an elected official.
Edwards , 2010 Ark. 398, at 5, 370 S.W.3d at 253 (citations omitted). In Edwards , this court held that theft, which Edwards committed while in office as mayor, constituted an "infamous crime" under article 5, section 9 of the Arkansas Constitution. 2010 Ark. 398, at 9, 370 S.W.3d at 255.
In the present case, Herweg pleaded guilty to, and was convicted of, the misdemeanor offense of giving a false report to a police officer in 2002. In doing so, Herweg admitted that he had given a false statement to fellow law-enforcement officers. We conclude that Herweg's conviction of giving a false report to a police officer is a crime of dishonesty committed with the intent to deceive and, as such, qualifies as an "infamous crime" under article 5, section 9 of the Arkansas Constitution. Thus, we hold that the circuit court properly found that the 2002 Texas conviction disqualifies Herweg from holding the office of the City's police chief. Without delving into the merits of Smith's underlying action, we further hold that the circuit court properly determined that Smith had established a likelihood of success on the merits.
D. Irreparable Harm
Next, we must determine whether irreparable harm will result in the absence of an injunction or restraining order. This court has held that "[e]ssential to the issuance of a temporary restraining order is a finding that a failure to issue it will result in irreparable harm to the applicant." Ledgerwood , 2017 Ark. 308, at 9, 530 S.W.3d at 343 (quoting Kreutzer v. Clark , 271 Ark. 243, 244, 607 S.W.2d 670, 671 (1980) ). The prospect of irreparable harm or lack of an otherwise adequate remedy is the foundation of the power to issue injunctive relief. 2017 Ark. 308, at 9, 530 S.W.3d at 343. Harm is normally considered irreparable only when it cannot be adequately compensated by money damages or redressed in a court of law. Id.
This court has stated that an appointed chief of police is a law enforcement officer within the statutory definition because he or she is responsible for the prevention and detection of crime and the enforcement of the criminal, traffic, or *670 highway laws of this state. See Allen v. Titsworth , 279 Ark. 138, 649 S.W.2d 185 (1983) ; see also Ark. Code Ann. § 12-9-102(2) (Supp. 2017). Moreover, a citizen and taxpayer may maintain a suit to prevent a misapplication of funds or to protect against unlawful official acts that could logically result in illegal exaction as well as to require reparation for that which has been done. See Tedford v. Mears , 258 Ark. 450, 526 S.W.2d 1 (1975).
In the present case, the circuit court found that, for two reasons, irreparable harm would result if Herweg continued to occupy the office of chief of police. First, it would be inappropriate for Herweg to carry out the duties and responsibilities of a police chief while illegally holding that office. Second, Smith and the other taxpayers would bear the burden of replenishing the funds paid to Herweg if he continued to serve as police chief.
Based on the foregoing precedent, we agree with the circuit court's rulings on irreparable harm. We conclude that the circuit court properly ruled that Smith and the other taxpayers would bear the burden of replenishing any funds paid to Herweg. Accordingly, we hold that the circuit court properly found that irreparable harm would result if Herweg were to remain in office in violation of article 5, section 9 of the Arkansas Constitution.
For the foregoing reasons, we hold that the circuit court did not abuse its discretion in granting Smith's motion for preliminary injunction and affirm the order of the circuit court.
Affirmed.
Hart, J., dissents.
Josephine Linker Hart, Justice, dissenting.
The majority has erred in stretching article 5, section 9 of the Arkansas Constitution to apply to a department head in a municipal corporation. This error is directly attributable to the majority's failure to follow the well-established principles of construction and constitutional interpretation.
Inexplicably, while the majority correctly notes that this court has not defined what is meant by "any office of trust or profit," it declines to do so. Instead, the majority's analysis focuses on the meaning of only a single word in section 9 : "any." "Any" has a well-known meaning in contemporary usage. Not so with the phrase "office of trust or profit," or even the word "office." The phrase "office of trust or profit" is a term of art, present in Arkansas Constitutions since 1836. See Ark. Const. 1836, art. IV, § 13. It is also found in the U.S. Constitution. In Article I, section 9, it is part of a clause that prohibits "Persons holding any Office of Profit or Trust" from receiving without consent of Congress "any present, Emolument, Office or Title of any kind whatever, from any King, Prince, or foreign State." In Article II, section 1, "Office or Profit or Trust" defines a class of people, along with senators and congressmen, who are not allowed to serve as electors in electoral college. In the context of the U.S. Constitution, the phrase "of profit or trust," while not definitively defined, must logically refer to a more restrictive class than mere office holders, or else the words would be mere surplusage. Certainly, an office of profit or trust must be more than mere public employment. Michael C McNerney, Trust or Profit: How Military Officers are Bound by the Constitution , 15 & n.45 (May 12, 2009), https// works.bepress.com/michael_mcnerney/2/download. This court has construed the word "office." In Lucas v. Futrall , 84 Ark. 540, 106 S.W. 667 (1907), this court was required to determine whether the superintendent of the Arkansas School for the Blind was a "public office" or simply just public employment. The Lucas *671 court cited with approval the seminal case of United States v. Maurice , 26, F. Cas. 1211, 1214 (Marshall, Circuit Justice, D. Virginia, 1823), wherein Chief Justice Marshall stated that "[a]n office is defined to be 'a public charge or employment," and "[a]lthough an office is 'an employment,' it does not follow that every employment is an office." Id. at 547, 106 S.W. at 669. In determining the distinction between public employment and public office, the Lucas court eschewed a "hard and fast rule" in favor of recognizing "controlling principles," that are to be applied to "individual cases as they arise." Id. The Lucas court cited several factors to be considered such as whether a duty is a "continuing one," defined by "rules prescribed by the government and not by contract," and whether the duties continue if the person is changed. Id.
However, rather than applying the Lucas factors to resolve the pivotal question of whether the position of chief of police in Jacksonville is "an office of profit or trust," the majority simply assumes that it is an "office" and relies on dicta in Allen v. State , 327 Ark. 350, 939 S.W.2d 270 (1997), to conclude that because it is a public office, it was a "public trust." I reject this reasoning. Every position of government employment involves some degree of "trust." The custodians in the Justice Building have access to every office; the general public does not.
However, even if I was to subscribe to the majority's reasoning that the police chief in a municipal corporation is an "office of profit or trust," the case before us still demands that this court determine whether the "office" of police chief in the City of Jacksonville is the type of "office" contemplated by article 5, section 9. In my view, it is not.
In construing the Arkansas Constitution, this court is obligated to harmonize all the relevant provisions in the document. In Wright v. Ward , this court stated:
The same general rules which govern the construction and interpretation of statutes and written instruments generally, apply to and control in the interpretation of written constitutions. They are made by practical and intelligent men for the practical administration of the government, and they are to receive that interpretation which will give effect to the intent of the framers as deducible from the language employed and operate most benignly in the interest of the governed, and best harmonize with and give effect to the general scope and design of the instruments. As in other written instruments, the intent and design of a particular provision being ascertained from the words used, effect will be given to it in harmony with such intent and design."
170 Ark. 464, 467, 280 S.W. 369, 370-71 (1926) (quoting with approval People v. Fancher , 50 N.Y. 288 (1872) ). Thus, it is not proper to simply pluck a phrase or a clause out of the constitution and treat it as though it is a stand-alone provision. Id.
A municipal corporation is defined as "[a] city, town or other local political entity formed by charter from the state and having the autonomous authority to administer the state's local affairs. Black's Law Dictionary 1175 (10th ed. 1995). Proper construction of article 5, section 9 requires this court to consider and harmonize this section with the part of the Arkansas Constitution that deals specifically with municipal corporations: article 12, entitled "Municipal and Private Corporations." See Wright , supra .
A study of article 12 reveals that incorporated cities and towns are not direct arms of the state; they are entities that are chartered in accordance with laws passed *672 by the General Assembly. Ark. Const. art. 12, § 3. It states:
The General Assembly shall provide, by general laws, for the organization of cities (which may be classified) and incorporated towns; and restrict their power of taxation, assessment, borrowing money and contracting debts, so as to prevent the abuse of such power.
Accordingly, municipal corporations have more in common with business corporations-they are also authorized by article 12-than any of the three branches of government. By way of analogy, applying article 5, section 9 to enjoin the municipal corporation known as the City of Jacksonville from hiring a police chief is akin to enjoining Walmart from hiring a director of marketing. It therefore does not directly follow that every position of public employment in a municipal corporation would be subject to the same qualifications as the constitutional officers identified in the text of the Arkansas Constitution.
Municipal corporations are purely creatures of statute and stand on an independent footing as compared to the three branches of statewide government. In accordance with the constitutional mandate of article 12, the General Assembly enacted statutes that govern everything from the process of incorporation to the selection of city department heads, the latter being of pivotal concern in the case before us. Arkansas Code Annotated section 14-42-110 (Repl. 2013), entitled, "Removal and appointment power," gives the mayor of Jacksonville exclusive authority to hire and fire department heads, in this case, the chief of police. Section 14-42-110 states:
(a)(1) Mayors in cities of the first class and second class and incorporated towns shall have the power to appoint and remove all department heads, including city and town marshals when an ordinance has been passed making city and town marshals appointed, unless the city or town council shall vote by a two-thirds majority of the total membership of the council to override the mayor's action.
(2) Provided, however, that in cities of the first class and second class with civil service commissions, the governing body of the city may delegate by ordinance the authority to appoint and remove the heads of the police and fire departments to the city's civil service commission.
(b) City managers in cities having a city manager form of government shall have the power to appoint and remove all department heads. In cities with a city manager form of government and with civil service commissions, the civil service commission shall have the power to override the city manager's appointment or removal of the police or fire chief by a majority vote of the total membership of the commission.
(c) The provisions of this section shall not apply to department heads not under the control of the governing body of the city and shall not apply to cities having a city administrator form of government.
This statute sets forth with specificity the means of selecting department heads that are separate and distinct from the processes required for state officers found in article 6 and elsewhere in the Arkansas Constitution. I therefore cannot conclude that a position that wields only municipal authority should be considered the same as one that wields statewide authority.
Pursuant to the foregoing analysis, the circuit court's conclusion that Ms. Smith is likely to succeed on the merits of her petition is clearly erroneous. I would reverse *673 and dismiss the preliminary injunction.
I respectfully dissent.