ROBERT J. GLADWIN, Judge
Appellant TEGNA, Inc. (TEGNA),[1] appeals the May 21, 2018 preliminary injunction (PI) issued by the Pulaski County Circuit Court. TEGNA argues that the circuit court erred (1) because the PI is *101 an unconstitutional prior restraint, and (2) in finding that appellees Justice Courtney Goodson and the Courtney Goodson Campaign (collectively Goodson) proved likelihood of success on the merits and irreparable harm. Because the restrictions imposed by the PI expired within the pendency of this appeal, all issues concerning the propriety of the injunctive relief granted are rendered moot by the passage of time. Accordingly, we dismiss.
Justice Goodson, a sitting Arkansas Supreme Court Justice, ran for reelection in 2018. TEGNA is the parent company of KTHV Channel 11 (KTHV), a news station headquartered in Little Rock, Arkansas, whose viewers include approximately 575,000 households in Arkansas and the Pulaski County viewing area. On May 2, 2018, the Judicial Crisis Network (JCN) placed an advertisement (JCN Campaign Ad) with KTHV regarding Goodson. The JCN Campaign Ad audio stated the following:
Courtney Goodson has been taking gifts and big money from donors for years. Hundreds of thousands of dollars from law firms with cases before her court. Even a fifty-thousand-dollar trip to Italy on a donor's luxury yacht. What's worse, Goodson asked for an $18,000.00 raise making her salary bigger than the Governor's. Courtney Goodson: a political insider abusing the system. Tell her to stop taking gifts and asking for money.
On May 3, 2018, Goodson filed a complaint with the Rapid Response Team (RRT), which is charged by the Arkansas Judicial Campaign Conduct and Education Committee, Inc. The RRT is comprised of Judge Audrey Evans, Danyelle Walker, Hal Bass, Elizabeth Andreoli, and Roy Ockert. The RRT reviews complaints filed only by candidates or campaigns for the Arkansas Supreme Court and the Arkansas Court of Appeals.
On May 14, 2018, eight days before the election, Goodson filed an emergency motion against TEGNA and other members of the media based on alleged defamation arising out of the publication of the JCN Campaign Ad. Goodson sought an ex parte temporary restraining order or, alternatively, a preliminary injunction prohibiting the media defendants from publishing the JCN Campaign Ad through the conclusion of the election.
The Pulaski County Circuit Court held a hearing on Friday, May 18, to review the JCN Campaign Ad. The circuit court first heard testimony from Walker, a member of the RRT, who explained that the RRT had received a complaint about the JCN Campaign Ad from Goodson on May 3, 2018. As part of its review of Goodson's complaint, the RRT considered the determination of the Judicial Discipline and Disability Commission (JDDC) from September 18, 2013, which reviewed a complaint filed by Kathy Wells over concerns about Goodson's "reported gifts, among other items in [Goodson's] financial disclosures, a $50,000.00 vacation to Italy." The JDDC determined that Goodson properly disclosed the gifts in question, which allowed the public to know of any potential conflict; that she had received many gifts in question from her husband during a time in which she was engaged to and dating her husband; and specifically found no evidence of judicial misconduct or wrongdoing by Goodson. The RRT also reviewed a summary of cases and a printout of cases in which Goodson had recused from appeals involving donors or those associated with gifts. Certified copies of Goodson's recusals were provided to the circuit court and admitted into evidence.
Walker testified that on May 9, 2018, the RRT determined, after reviewing these *102 materials, that the JCN Campaign Ad was false and misleading and requested by letter that JCN either voluntarily withdraw the advertisement or provide evidence refuting the findings of the RRT within twenty-four hours. In its letter, the RRT informed JCN of its finding that under the RRT's rules and procedures, Goodson had met the initial burden of demonstrating that the JCN Campaign Ad was false or misleading. The RRT determined that a person of ordinary intelligence would conclude that Justice Goodson did not request a pay raise, as there is no evidence to support the statement that she requested a pay raise, and it would be a violation of her duty of confidentiality to reveal her vote on the pay raise. The RRT also determined, based on its review of the materials submitted by Goodson, that a person of ordinary intelligence would conclude that Justice Goodson did not hear cases filed by or on behalf of donors, meaning donors did not receive benefits from Justice Goodson.
Walker explained that the RRT informed JCN that if JCN failed to respond within twenty-four hours, the RRT would make a final finding that the JCN Campaign Ad and related print ad contained false or misleading information. JCN did not respond to the May 9, 2018 letter, and on May 10, 2018, the RRT delivered to JCN a cease-and-desist letter, in which the RRT issued its final finding that the JCN Campaign Ad contained false and misleading information based on its review of the materials provided by Goodson and JCN's failure to respond within twenty-four hours. After the RRT sent cease-and-desist letter to JCN, Goodson sent a cease-and-desist letter to KTHV and other media companies on May 11, 2018, in which she provided notice to KTHV and other media companies of the falsity of the JCN Campaign Ad. With the exception of Comcast and TEGNA, all other named defendants voluntarily withdrew the ad and did not appear at the hearing.
The circuit court also heard testimony from Chad Kelley, the national and regional sales manager at TEGNA's KTHV.[2] Although Kelley did not know the exact number of times per day the JCN Campaign Ad ran, he testified that it was probably "more than five times per day." According to his testimony, JCN paid an average of $80,000 a week for its purchase of the ad. Kelley testified that on May 11, 2018, Goodson sent TEGNA a letter threatening legal action and demanding that TEGNA, along with broadcasters across Arkansas, cease and desist publishing the JCN Campaign Ad. Kelley explained that he was notified about the campaign's letter very late in the day and that he read the letter as soon as he returned to the office on Monday, May 14, 2018. He immediately sent the letter to the liaison between TEGNA and JCN requesting that JCN provide documentation or substantiation of the JCN Campaign Ad. TEGNA received JCN's response that same day.
In its response, JCN wrote that the statement regarding Justice Goodson's request for a pay raise is true because, by Justice Goodson's own admission, the Arkansas Supreme Court, of which she is a member, had authorized Chief Justice John Dan Kemp to appear on behalf of the entire Arkansas Supreme Court before the Independent Citizens Commission to ask for a raise for all the justices. JCN wrote that if Justice Goodson would publicly state that she had voted against the pay-raise proposal, JCN would revise the advertisement. Regarding the statements as to Justice Goodson's acceptance of gifts and money from donors, JCN stated that *103 the statements are true and that Justice Goodson had not denied them. JCN submitted that Justice Goodson's response regarding recusal was a red herring because the JCN Campaign Ad contained nothing related to the issue of recusal, which is a separate matter from the issue of accepting gifts and large campaign donations.
Kelley testified that he sent the cease-and-desist letter and JCN's response to Covington Burling, TEGNA's outside counsel. After receiving a response from counsel, TEGNA decided to continue running the JCN Campaign Ad. Goodson commenced legal action against TEGNA and the other media defendants on May 14, 2018, at 12:44 p.m.
At the close of the hearing, the circuit court entered the PI on May 18, which was incorporated into a formal order for preliminary injunction on May 21, prohibiting the media defendants from publishing the JCN Campaign Ad effective immediately and through midnight on May 22. The circuit court found that continued publication of the JCN Campaign Ad would cause irreparable harm to Goodson's campaign and that Goodson had demonstrated a likelihood of success on the merits of a defamation claim against the media defendants, including a likelihood of proving actual malice. TEGNA and Comcast filed timely notices of appeal on May 22, 2018.[3]
In determining whether to issue a preliminary injunction, the circuit court must consider two things: (1) whether irreparable harm will result in the absence of an injunction or restraining order and (2) whether the moving party has demonstrated a likelihood of success on the merits. LaPointe , supra . Paragraph 5 of the May 21, 2018 PI states in its entirety:
The Plaintiffs' request for preliminary injunction is granted. The Defendants and their stations are hereby enjoined from airing the ad from [JCN] played in open Court and labeled "Insider" according to Comcast's Exhibit 5. Such order as announced from the bench is effective immediately and through midnight on May 22, 2018.
TEGNA argues that this court must reverse the PI and hold that both the United States and Arkansas Constitutions prohibit temporary restraining orders and preliminary injunctions silencing campaign speech because (1) campaign advertisements are protected speech; (2) temporary restraining orders and preliminary injunctions prohibiting publication of campaign advertisements are prior restraints; and (3) Goodson cannot overcome the heavy presumption against the constitutional validity of prior restraints. TEGNA claims that a failure to do so will result in future defamation suits from aggrieved political candidates across Arkansas who will follow Goodson's lead and sue the press to silence *104 speech harmful to their campaigns. See Monitor Patriot Co. v. Roy , 401 U.S. 265, 274 n.4, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971) (noting that "[i]f actionable defamation is possible in [campaign advertising], one might suppose that the chief energies of the courts, for some time after every political campaign, would be absorbed by libel and slander suit.' ") (quoting Dix W. Noel, Defamation of Public Officers and Candidates , 49 Col. L. Rev. 875 (1949) ).
We decline to reach the merits of TEGNA's arguments because any and all restrictions imposed by the PI expired by its express terms within the pendency of this appeal;[4] accordingly, issues concerning the propriety of the injunctive relief granted have been rendered moot by the passage of time. See, e.g. , U.S. Tr. Co. v. Rich , 199 N.C.App. 320, 682 S.E.2d 248 (N.C. Ct. App. 2009) (reiterating that "where the restrictions imposed by a preliminary injunction expire within the pendency of an appeal, issues concerning the propriety of the injunctive relief granted are rendered moot by the passage of time.") (citing Artis & Assocs. v. Auditore , 154 N.C.App. 508, 572 S.E.2d 198, 199 (N.C. Ct. App. 2002) ). Also in support of this holding, we cite as instructive Cory v. Cory , 989 So.2d 855, 859-60 (La. Ct. App. 2008), in which the Louisiana Court of Appeals noted that the order of protection that the appellant was challenging expired on June 14, 2008, by its own terms. The court held that the argument that the circuit court erred in issuing the protective order was moot:
An appellate court, as a matter of judicial economy, has a right to consider the possibility of mootness on its own motion and to dismiss the appeal if the matter has in fact become moot. A moot case is one which seeks a judgment or decree which, when rendered, can give no practical relief. It is well settled that an appellate court will not render advisory opinions from which no practical results can follow. As a result, courts have established the rule that moot questions will not be considered on appeal. In cases of injunctive relief, it is clear that when the activity which a plaintiff seeks to enjoin has already occurred during the pendency of the suit, the matter is moot and the propriety of the trial court's action in denying or granting the injunction will not be considered by the reviewing court.
Id. at 860 (internal citations omitted).
In Wilson v. Walther , 2017 Ark. 270, at 7, 527 S.W.3d 709, 714, our supreme court noted that
[a]s a general rule, appellate courts of this state will not review issues that are moot. Honeycutt v. Foster , 371 Ark. 545, 548, 268 S.W.3d 875, 878 (2007). A case becomes moot when any judgment rendered would have no practical legal effect upon a then existing legal controversy. Shipp v. Franklin , 370 Ark. 262, 267, 258 S.W.3d 744, 748 (2007).
Arkansas appellate courts have consistently held that they will not review issues that are moot because to do so would be to render an advisory opinion. Keep Our Dollars in Independence Cty. v. Mitchell , 2017 Ark. 154, at 10, 518 S.W.3d 64, 70. The court has, however, also recognized two exceptions to the mootness doctrine: (1) issues that are capable of repetition, yet evade review, and (2) issues that raise considerations of substantial public interest which, if addressed, would prevent future *105 litigation Id. We hold that this case does not fall within either of the recognized exceptions.
With respect to the first exception, although the issue of allegedly defamatory campaign ads is capable of repetition in future elections, this case fails as to the second prong of the exception in that the issue is not doomed to evade review if not addressed herein. Goodson's request for a PI pertained solely to the JCN Campaign Ad. Any future allegations of defamatory campaign advertisements will deal with distinctively unique candidates, facts, and then-governing campaign rules and regulations that will need to be reviewed on a case-by-case basis. To hold otherwise would constitute a prohibited advisory opinion.
As to the second exception, which also has two prongs-(1) that there be a substantial public interest in the issues being considered and (2) that addressing such issues, despite their being otherwise moot, would prevent litigation-we hold that only the first prong has been met in this case. We acknowledge an unquestionable substantial public interest in the First Amendment and prohibiting the prior restraint of expression; however, addressing this issue will not prevent future litigation. Because the election has already occurred, neither party to this case stands to gain relief based on the outcome of this appeal, and any holding with respect to similar future claims regarding political campaign-ad content would be both speculative and advisory in nature, we decline to address the merits of TEGNA's arguments. Accordingly, we dismiss.
Dismissed.
Harrison and Whiteaker, JJ., agree.

Comcast of Arkansas, Inc., was originally an appellant in this case; however, its motion to dismiss was granted by this court on August 22, 2018.

Coburn Howell, Comcast's local sales manager for the Little Rock viewing area, also testified regarding issues similar to those covered by Kelley.

Appellate courts typically review grants of preliminary injunctions under an abuse-of-discretion standard. LaPointe v. New Tech., Inc. , 2014 Ark. App. 346, at 4, 437 S.W.3d 126, 129. When an appeal reaches a court via an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. Id. ; City of Jacksonville v. Smith , 2018 Ark. 87, 540 S.W.3d 661. TEGNA claims that this case requires the application of a more rigorous de novo standard of review because the PI involves the First Amendment. See Weiss v. McLemore , 371 Ark. 538, 268 S.W.3d 897 (2007) (holding that issues of both statutory construction and constitutional interpretation are reviewed de novo); see also El-Farra v. Sayyed , 365 Ark. 209, 226 S.W.3d 792 (2006) (conducting de novo review of the interpretation of the United States Constitution); and Thomson Newspaper Pub., Inc. v. Coody , 320 Ark. 455, 896 S.W.2d 897 (1995). Because we are deciding this case on other grounds, we need not make this determination at this time.

Paragraph five of the PI expressly provides that the media defendants were enjoined from airing the JCN Campaign Ad effective immediately and through midnight on May 22, 2018, the date of the election. The judicial election runoff was held on November 6, 2018, and the results were certified by the Arkansas Secretary of State on November 16, 2018.