Cite as 2021 Ark. App. 195

# ARKANSAS COURT OF APPEALS

DIVISION III
No. CV-20-113

| | |
|---|---|
| BRANDON MOUNCE AND UNIQUE GUTTERING & INSULATION, LLC<br><br>APPELLANTS<br><br>V.<br><br>JERONIMO INSULATING, LLC, D/B/A G&S INSULATING<br><br><br>APPELLEE | **Opinion Delivered** April 28, 2021<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CV-19-3236]<br><br><br>HONORABLE BETH STOREY BRYAN, JUDGE<br><br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Judge

This is an interlocutory appeal of the circuit court's grant of a temporary restraining order (TRO) pending trial against a former employee of an insulation and construction business. Such an interlocutory order is specifically appealable under Ark. R. App. P.-Civ. 2(a)(6) (2020). The December 2019 order temporarily prohibited appellants, Brandon Mounce and his company, Unique Guttering & Insulation, LLC (collectively "Mounce") from contacting the customers of appellee, Jeronimo Insulating, LLC, d/b/a G&S Insulating (hereinafter "Jeronimo") or engaging in any disparaging communications about Jeronimo, limiting the prohibition as to Jeronimo's Northwest Arkansas operations. Mounce asserts that the circuit court committed reversible error in entering the TRO because (1) the circuit court wrongly applied Arkansas Code Annotated section 4-75-101 (Supp. 2019) to Jeronimo's request for a TRO because common law applies, and (2) the non-compete

agreement that Mounce signed during his employment was unenforceable. Mounce has failed to establish reversible error. We affirm.

Mounce worked for Jeronimo between January 2009 and November 2019 and was employed at its regional office in Springdale, Arkansas. Mounce worked as a sales representative and later was promoted to sales production manager. Mounce entered into a "Non-Competition and Non-Disclosure Agreement" with Jeronimo, which was dated January 5, 2009. As relevant here, Mounce agreed not to compete with Jeronimo in its insulation business activities, not to use or share any of Jeronimo's trade secrets, not to use or reveal Jeronimo's confidential information (to include customer information, pricing, procedures, etcetera), and not to act in any way that would cause a termination of any business relationship with Jeronimo's customers. The agreement was to last until the expiration of one year following Mounce's separation from Jeronimo and cover a one-hundred-mile radius of Jeronimo's offices in Little Rock and Springdale. The agreement contained a severability clause permitting excision of any provision or part judicially determined to be illegal, invalid, or unenforceable so that the remainder of the agreement would be fully valid, legal, and enforceable. The agreement also provided that any breach by Mounce would cause irreparable injury to Jeronimo and entitle Jeronimo to seek an injunction as well as any other remedy available.

Jeronimo alleged in its December 2019 complaint that Mounce started his own competing business based in Springdale while still employed with Jeronimo. Jeronimo appended the agreement that Mounce signed as an employee of Jeronimo. Jeronimo alleged that Mounce was wrongly siphoning off Jeronimo's customers and related jobs; abusing his

2

access to customer contacts and relationships; disparaging Jeronimo to its customers; and creating confusion in the marketplace that was damaging to Jeronimo's business reputation. These wrongful acts allegedly dated back to 2014 and continued after Mounce's departure from Jeronimo.[1] In addition to money damages, Jeronimo sought injunctive relief and any other relief available under the law.

Jeronimo sought a TRO against Mounce pending trial. Jeronimo presented an affidavit to the circuit court in support of this request, averring in part that Mounce was given access to company files including client contact information; that irreparable harm could occur if Mounce took customers away; that Mounce had communicated negatively about Jeronimo, which could affect Jeronimo's business reputation; and that injunctive relief was warranted to keep Mounce from soliciting Jeronimo's customers "and talking badly about our company which will be harm that we will not be able to reverse, as once customers are gone, [it] is nearly impossible to get them back."

The circuit court issued an emergency TRO on December 9, 2019, a few days after the complaint had been filed. Jeronimo's attorney prepared the emergency TRO. Therein, the circuit court prohibited Mounce from the following activities pending trial: performing

---

[1]There were seven counts alleged in the complaint including conversion (stealing Jeronimo's income, materials, and business resources while Mounce was still an employee), breach of contract (failing to repay Jeronimo for a loan and breaching the employment agreement by stealing money from Jeronimo's jobs), breach of fiduciary duty (leading to money damages), tortious interference with Jeronimo's contractual relationships and Jeronimo's business expectancy, misappropriation of trade secrets under the Trade Secrets Act (including customer information, entitling Jeronimo to injunctive relief under Ark. Code Ann. § 4-75-604), unjust enrichment warranting the imposition of a constructive trust, and a civil action for felonious theft greater than $25,000. We attempt here to summarize and simplify the allegations but provide proper context to the interlocutory order that is on appeal.

business related to insulation, guttering, or installation of fireplaces within one hundred miles of Jeronimo's main office in Little Rock and its regional office in Springdale; contacting and soliciting Jeronimo's customers in order to perform such business; communicating Jeronimo's pricing of its products; or engaging in any communications that would damage Jeronimo's reputation and business. The emergency order set a December 18 full hearing on the request for a TRO.

At the hearing, Jeronimo's owner, Jeronimo Lopez, testified in line with the allegations of the complaint stating the Mounce had been specifically trained for this job, had been treated as a trusted employee, and had access to password-protected customer and pricing lists. Mr. Lopez believed that Mounce had already harmed his business's reputation and that Mounce's continued contact would further harm its reputation and wrongly permit Mounce to steal its clients. The office manager and the secretary of the Springdale office testified to the confusion and loss of business that was attributable to Mounce's contacting Jeronimo's customers. Their testimony confirmed that the customer lists were kept on the computer, that a hard copy was kept in a file cabinet in the office, and that very few people had access to that information. Jeronimo wanted the court to issue an order preventing Mounce from, among other things, contacting Jeronimo's customer base and disparaging Jeronimo's business. The circuit court made clear in its evidentiary rulings at this hearing that any allegations that could be remedied with money damages were not relevant to the request for a TRO.

Mounce testified in his own defense generally and specifically denying the allegations. Mounce's arguments centered on his denials that Jeronimo's customer lists or pricing

4

information were protected interests, denials that he learned any particular trade secrets or particular ways to conduct business from Jeronimo, denials that he conducted any business in or around Little Rock, and denials that he had much work at all in Northwest Arkansas within one hundred miles of Jeronimo's operation. Mounce's argument did not include an argument that the time limit within the non-compete agreement was unreasonable.

In ruling from the bench, the circuit court remarked that Mounce's credibility was in question, ruling that Jeronimo had demonstrated that its customer lists were protected materials, that Jeronimo had demonstrated a likelihood of success on the merits, that Mounce would be temporarily enjoined from contacting Jeronimo's customers until a trial was conducted on the merits, and that this prohibition would relate to Jeronimo's Northwest Arkansas (Springdale) operation. The circuit court stated its opposition to Jeronimo's earlier request to temporarily prohibit Mounce from performing competing business in a one-hundred-mile radius of Jeronimo's Little Rock location; rejected any temporary restraint on Mounce's knowledge about Jeronimo's pricing practices; and rejected any purported competition relating to gutter or fireplace work stating that it would limit the temporary restriction to insulation work.

On December 30, a formal TRO was entered, reciting that:

> 1. Plaintiff has provided enough facts to show the likelihood of success on the merits of this case.

> 2. The Verified Motion for a Temporary Restraining Order is GRANTED, in part, and Defendants Brandon Mounce, Unique Guttering & Insulation, L.L.C., and any and all of their officers, agents, servants, and employees, are hereby restrained from:
>> a. Contacting Plaintiff's customers for any reason (person[s] who were Plaintiff's customers, potentials customers or any customers who had any contact with Defendant during his employment) during the

5

pendency of this action, as Plaintiff successfully proved that his customer lists are a protected interest and an asset of his company.

b. Engaging in any communications that would damage Plaintiff's reputation and business.

c. That this order is limited to Plaintiff's operations in Northwest Arkansas.

3. Plaintiff must place a surety bond of $5,000.00 pursuant to Ark. R. Civ. P. 65(c) as security for this Order.

4. That a two-day trial date has been set for May 12, 2020, and May 13, 2020, at 9:00 a.m. to give the parties time to conduct discovery.

5. Except as provided above, Plaintiff's Motion is denied.

This interlocutory appeal challenges the December 30, 2019 TRO.

Irreparable harm is the touchstone of injunctive relief, and harm is normally only considered irreparable when it cannot be adequately compensated by money damages or redressed in a court of law. *See Ark. Dep't of Hum. Servs. v. Ledgerwood*, 2017 Ark. 308, 530 S.W.3d 336; *Lamb & Assocs. Packaging, Inc. v. Best*, 2020 Ark. App. 62, 595 S.W.3d 378. In determining whether to issue a preliminary injunction pursuant to Rule 65, the circuit court must consider two issues: (1) whether irreparable harm will result in the absence of an injunction or restraining order, and (2) whether the moving party has demonstrated a likelihood of success on the merits. *City of Jacksonville v. Smith*, 2018 Ark. 87, 540 S.W.3d 661. The appellate court reviews the grant of a preliminary injunction under an abuse-of-discretion standard. *Id.* In considering an appeal of an order granting a preliminary injunction, the appellate court will not delve into the merits of the case further than is necessary to determine whether the circuit court exceeded its discretion in granting the injunction. *Id.* The sole question before the appellate court is whether the circuit court

6

departed from the rules and principles of equity in making the order and not whether the appellate court would have made the order. *Id*. Under these parameters, we hold that the circuit court did not abuse its discretion in temporarily prohibiting Mounce from having contact with Jeronimo's Northwest Arkansas customers or conveying disparaging communications.

Mounce attacks the order granting a temporary restraining order on the basis that: (1) the circuit court applied the incorrect law to this covenant not to compete, specifically contending that it should have applied the common law and not the statute that was passed after this non-compete agreement was executed, meaning that the circuit court, in effect, inappropriately "blue lined" the non-compete agreement by entering this TRO; and (2) the circuit court should have found this non-compete agreement invalid and therefore unenforceable, meaning there was no valid basis to enjoin Mounce's actions before trial. Thus, Mounce does not directly address the abuse-of-discretion standard that applies to an interlocutory appeal of a TRO. Mounce does not contest the existence of potential irreparable harm to Jeronimo. Instead, Mounce focuses on the substantive legal issue of the validity of the underlying non-compete agreement and whether it will ultimately be upheld. We find Mounce's appellate arguments without merit and hold that Mounce has not demonstrated reversible error.

First, Mounce asserts that the circuit court applied the incorrect law to evaluate the non-compete agreement's terms. Mounce does not convince us that such a legal error occurred. The legislature codified Arkansas's law pertaining to non-compete agreements in Arkansas Code Annotated section 4-75-101 (Supp. 2015), which became effective in 2015.

This agreement was purportedly executed in 2009, predating the statute's effective date, which would make the agreement subject to review under common-law rules. *See Box v. J.B. Hunt Transp., Inc.*, 2017 Ark. App. 605, 533 S.W.3d 603. The point, according to Mounce, is that common law does not permit a court to "blue pencil" a covenant not to compete; that the 2015 statute permits such "blue penciling" to make a covenant not to compete enforceable as edited; and, therefore, the circuit court must have committed legal error in "blue penciling" (paring down) this agreement to decide that that there was a likelihood of success on the merits. Stated differently, Mounce contends that Arkansas law in 2009 mandated an all-or-nothing approach to enforcing or not enforcing a non-compete agreement; that under common law, this is obviously an overly broad and unenforceable agreement; and that this TRO is tantamount to editing and upholding an invalid agreement.

Here, the circuit court did not expressly apply section 4-75-101, nor did it reject common-law principles. Moreover, Mounce does not point to anywhere in the record that the circuit court "blue penciled" the non-compete agreement. Instead, the circuit court placed a temporary restriction to prevent Mounce from "bad mouthing" Jeronimo to its Northwest Arkansas customers or from communicating with those customers on its lists until trial, then set five months away. This was well within the equitable powers of the circuit court. Mounce cannot establish that the circuit court applied the wrong law here; thus, there is no reversible error presented in the first point on appeal.

We hasten to add that the agreement itself contains a severability clause, so the parties agreed to permit reformation of this non-compete agreement to any extent necessary to make it enforceable under the law. The burden is on the party challenging the covenant to

8

show that it is unreasonable. *Moore v. Midwest Distrib., Inc.*, 76 Ark. App. 397, 65 S.W.3d 490 (2002). Covenants not to compete are reviewed on a case-by-case basis. *Statco Wireless, LLC v. Sw. Bell Wireless, LLC*, 80 Ark. App. 284, 95 S.W.3d 13 (2003). This severability clause, which these parties agreed to, provides authority within this contract, regardless of any statutory provision, to construe this agreement in a manner that could be upheld under the law. This supports the circuit court's "likelihood of success on the merits" ruling.

Next, Mounce asserts that Jeronimo had no "valid protectable interest" such that the covenant not to compete is unenforceable. Customer lists can be such a protectable interest. *See Burleigh v. Ctr. Point Contractors, Inc.*, 2015 Ark. App. 615, 474 S.W.3d 887. Although Mounce spends considerable time in his brief assessing whether the circuit court could validly enjoin Mounce as to pricing information, special training, computer software, goodwill, an "overly broad" one-hundred-mile radius, and trade secrets, no such TRO was entered. This temporary injunction relates to use of Jeronimo's customer lists and disparaging or business-damaging communications with those customers, only as to Jeronimo's Northwest Arkansas (Springdale) operation. Customer lists have been looked upon by the courts as a most valuable asset that is especially worthy of protection, particularly in a situation such as the one here where an agent is servicing customers away from the principal's place of business and builds up personal relationships that bind the customer to him instead of the principal. *See Statco Wireless, LLC, supra.* This was dependent on the circuit court's assessment of the witness's credibility, and Mounce's credibility was definitely found to be lacking.

9

Mounce also asserts that he did not gain any "unfair competitive advantage" by virtue of his contact with Jeronimo's customers. Again, the circuit court here clearly found Mounce's credibility lacking, calling much of his testimony "dishonest." Mounce's alleged siphoning off Jeronimo's customers and "bad-mouthing" Jeronimo to those customers could be reasonably determined to constitute an unfair competitive advantage and a valid irreparable harm to prevent pending trial. Ordinary competition has not been hampered, but avoidance of irreparable harm has been achieved in this TRO. Whether Jeronimo will, in fact, prevail at trial on breach of this contract remains to be decided, depending on the evidence discovered and presented at trial.

We hold that the circuit court did not abuse its discretion in entering this TRO pending trial.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.

*Taylor Law Partners, LLP*, by: *Nick Mote*, for appellants.

*Galvis Law, PLLC*, by: *Angela Galvis Schnuerle*, for appellee.